[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 21, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-11138
Non-Argument Calendar

_____

D. C. Docket No. 06-20680-CR-JAG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAIRO ROBERTO HURTADO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 21, 2007)

Before BIRCH, HULL and PRYOR, Circuit Judges.

PER CURIAM:

After a jury trial, Jairo Roberto Hurtado appeals his two convictions for

knowingly possessing and using, without lawful authority, the means of identification of another person during and in relation to the commission of another enumerated felony, in violation of 18 U.S.C. § 1028A(a)(1).  Hurtado's appeal presents two issues of first impression regarding the statutory interpretation of § 1028A(a)(1), namely whether § 1028A(a)(1) requires the government to prove (1) that Hurtado stole the identification of another person, in order to show the possession or use was "without lawful authority," and (2) that Hurtado knew that the identification in the name of Marcos Alexis Martinez Colon, which he was using, belonged to another actual person.  After review, we affirm Hurtado's § 1028A(a)(1) convictions.

## I.  BACKGROUND

The indictment against Hurtado contained these six counts: (1) one count of knowingly making false statements in a passport application, in violation of 18 U.S.C. § 1542; (2) one count of knowingly making false statements and misrepresentations of material facts, in violation of 18 U.S.C. § 1001(a)(2); (3) two counts of knowingly possessing and using the means of identification of another during and in relation to the commission of another enumerated felony (here the §§ 1542 and 1001(a)(2) felonies), in violation of 18 U.S.C. § 1028A(a)(1), and (4) two counts of falsely representing himself as a United States citizen, in violation of

2

18 U.S.C. § 911.

At trial, the government presented evidence that, in August 2006, Hurtado submitted a passport application in the name of Marcos Alexis Martinez Colon. As supporting identification documents, Hurtado used a birth certificate and driver's license in the same name of Marcos Alexis Martinez Colon.

Daniella Virues is a clerk employed by Miami-Dade County in the facility where Hurtado filed the passport application. At trial, Virues identified the documents that Hurtado filed. Virues further testified that her facility requires all passport applicants, such as Hurtado, to sign the passport application in front of the clerk and take an oath certifying that everything in the application is true to the best of their knowledge.

Noel Medina is a passport specialist for the United States Passport Agency. Medina testified that he reviewed Hurtado's passport application at the time it was submitted and noted several indications of fraud in the application and supporting identification documents. Among other things, Medina noticed that (1) the ages of the applicant's parents were written instead of the requested dates of birth, (2) the supporting driver's license was issued shortly before the passport application was submitted, and (3) the signature was printed with the surname Martinez misspelled. However, Medina did think that the Puerto Rican birth certificate submitted with

3

the application was authentic.

After Medina's review, Hurtado's passport application was assigned to Aaron Wilson, a supervisory special agent with the Diplomatic Security Service, a government agency that investigates passport fraud. Wilson verified that Colon's driver's license, birth certificate, and social security number, all used by Hurtado, were in fact authentic. However, Wilson noticed a discrepancy of four inches between the height listed on the passport application and the driver's license. Agent Wilson contacted the individual claiming to be the applicant Colon (who, in fact, was Hurtado) and set up a meeting to review the passport application.

On October 19, 2006, Hurtado, posing as Colon, met with Wilson, Special Agent Christopher Dowling, and Passport Specialist Michelle Vega. The agents initially questioned Hurtado in English. After Hurtado appeared to have trouble understanding some of the questions, Vega served as a Spanish interpreter. At first, Hurtado persisted that he was Colon and that all the information in his passport application was accurate, including the fact that he was from Puerto Rico and was a United States citizen.

Hurtado, however, failed to answer a number of the questions asked by the agents. Hurtado could not tell them the names of the schools he had attended. Hurtado also told the agents that he had never been married and did not have any

4

siblings.  However, the agents already had obtained information from Puerto Rico that showed Colon was married in 2003 and did have siblings.  The agents then asked Hurtado a series of basic questions about Puerto Rican geography and culture that native Puerto Ricans likely could answer.  Hurtado could not answer any of them, but tried to explain this by saying that his family had moved to Colombia when he was very young.

Agent Dowling, having grown suspicious by this point, told Hurtado that it was a crime to lie to federal agents and it was in his best interest to tell the truth.  Agent Dowling asked Hurtado what his real name was, and Hurtado admitted that his real name was Jairo Hurtado, not Colon, and that he was from Medellin, Colombia.  The agents arrested Hurtado, and Vega read him his Miranda[1] rights in Spanish.

Upon searching Hurtado's person, agents discovered a driver's license, a bank debit card, a library card, and a paycheck,[2] all of which were issued in Colon's name.  A later search also revealed that Hurtado had registered and insured a car in Colon's name.  The driver's license and bank debit card both had Hurtado's picture on them, even though they were issued in Colon's name.  It

---

[1]Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).

[2]The paycheck seized from Hurtado was from a trucking company that delivered to Brandsmart USA.  Hurtado listed Brandsmart USA as his employer on the passport application.

appeared that Hurtado himself had been making deposits into the bank account linked to the Colon debit card.

When the interview continued, Marina Zapata, a secretary for the Diplomatic Security Service, again read the <u>Miranda</u> warnings to Hurtado in Spanish. Hurtado then was given a form with the <u>Miranda</u> rights written in Spanish. Hurtado read the form, said he understood the <u>Miranda</u> rights, and signed the line on the form indicating that he understood his rights.

Marcos Fernandez, a special agent with the Diplomatic Security Service, subsequently joined Agent Dowling in the interview. Fernandez is a native Spanish speaker. Fernandez again reviewed the <u>Miranda</u> rights with Hurtado in Spanish, and Hurtado said he understood his rights. Hurtado then signed a form waiving his <u>Miranda</u> rights and indicated that he wished to continue the interview. Hurtado repeated that his real name was Jairo Hurtado and said that he had paid $1500 to an individual in Boston known as "Orlando" for the birth certificate and social security card bearing Colon's name. Hurtado then wrote out and signed a statement in Spanish confessing that (1) he bought a visa in Colombia to come to the United States, and (2) he later bought identification papers from a friend in Boston so he could obtain a passport and visit his family in Colombia.

After the questioning ended and while Hurtado was waiting to be transferred

6

to the federal detention center, Hurtado told Trey Terry, another special agent with the Diplomatic Security Service, that he bought a visa to come to the United States for $7000.

Juan Machado, an investigator for the Demographic Registry in Puerto Rico, also testified. Machado had reviewed the birth certificate in Colon's name that was used by Hurtado. Machado verified that the information on the birth certificate was accurate, including the fact that Colon was born in Puerto Rico. According to Machado, the Demographic Registry issued three birth certificates for Colon in 2005 and is the only agency authorized to issue Puerto Rican birth certificates. Only the individual named in the birth certificate, or someone with written authorization from that individual, can obtain a birth certificate from the Demographic Registry. Machado also testified that Colon himself requested two of the birth certificates and that a man named Luis Riserio requested the third birth certificate by presenting a letter of authorization. The Demographic Registry, however, did not contact Colon to verify the authenticity of the letter used by Riserio.

Javier Montero, a special agent with the Social Security Administration, testified that the United States Social Security Administration issued a social security number to Colon in 1985.

7

At trial, the government did not present any evidence as to how the real Colon's birth certificate and social security number had left his possession.[3] There was also no evidence that Hurtado had any credit cards in Colon's name (as opposed to the bank debit card) or that Hurtado's use of Colon's name had negatively impacted the finances of the real Colon.

At the close of the government's case, Hurtado submitted a written motion for a judgment of acquittal on the two § 1028A(a)(1) counts. Orally denying the motion, the district court rejected Hurtado's argument that there was no identifiable victim and that he should be acquitted because there was no "theft" involved here, which, Hurtado argued, § 1028A(a)(1) was intended to deter. The district court also found that Colon was without legal authority to transfer the use of his identification documents to Hurtado in any event.

In closing argument, defense counsel conceded guilt on all of the counts except the two § 1028A(a)(1) counts. The jury found Hurtado guilty on all six counts of the indictment. The district court sentenced Hurtado to six months' imprisonment as to the counts under §§ 911, 1001(a)(2), and 1542, to be served concurrently, and 24 months' imprisonment as to the two counts under § 1028A(a)(1), to be served concurrently with each other but consecutively to the

---

[3]Agent Dowling eventually located the real Colon in Puerto Rico.

8

sentences on the other four counts.

## II. DISCUSSION

The statute at issue is 18 U.S.C. § 1028A, entitled "Aggravated Identity

Theft," which provides, in pertinent part:

> Whoever, during and in relation to any felony violation enumerated in
> [§ 1028A(c)], knowingly transfers, possesses, or uses, without lawful
> authority, a means of identification of another person shall, in addition
> to the punishment provided for such felony, be sentenced to a term of
> imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1). Thus, to support a conviction under § 1028A(a)(1), the

government must prove that the defendant: (1) knowingly transferred, possessed,

or used; (2) the means of identification[4] of another person; (3) without lawful

authority; (4) during and in relation to a felony enumerated in § 1028A(c). There

is no dispute that Hurtado's other felonies (for violating 18 U.S.C. §§ 1001(a)(2)

and 1542) are enumerated in § 1028A(c) or that he used a means of identification

that did not belong to him. Instead, Hurtado claims that in order to prove the

"without lawful authority" element and the requisite intent under § 1028A(a)(1),

the government must show that he stole the identification documents from Colon

and that he knew Colon was an actual person. The government responds that proof

---

[4]The term "means of identification" is defined as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual," which includes, among other things, a name, social security number, date of birth, and an official driver's license. 18 U.S.C. § 1028(d)(7)(A).

9

of neither is required for a § 1028A(a)(1) violation. We agree and explain why.[5]

## A.     The Meaning of "Without Lawful Authority"

Citing the legislative history of § 1028A and the title of "Aggravated Identity Theft," Hurtado argues that § 1028A(a)(1) was enacted to punish individuals who steal another person's actual identity, not those who commit simple passport fraud. Hurtado emphasizes that Congress did not define what is meant by "without lawful authority" and that the most reasonable reading is that the defendant stole the means of identification. Hurtado argues that his two § 1028A(a)(1) convictions should be reversed because the government did not present any evidence that he stole Colon's identity.

"'In interpreting a statute we look first to the plain meaning of its words.'" United States v. Griffith, 455 F.3d 1339, 1342 (11th Cir. 2006) (quoting United States v. Maung, 267 F.3d 1113, 1121 (11th Cir. 2001)), cert denied, ___ U.S. ___, 127 S. Ct. 2028 (2007). The plain language of a statute is presumed to express congressional intent. United States v. Fisher, 289 F.3d 1329, 1338 (11th Cir. 2002).

Section 1028A(a)(1) plainly requires that the transfer, possession, or use of the means of identification of another person be "without lawful authority."

_____

[5]We review questions of statutory interpretation de novo. United States v. Mazarky, 499 F.3d 1246, 1248 (11th Cir. 2007).

Nothing in the plain language of the statute requires that the means of identification must have been stolen for a § 1028A(a)(1) violation to occur. For sure, stealing and then using another person's identification would fall within the meaning of "without lawful authority." However, there are other ways someone could possess or use another person's identification, yet not have "lawful authority" to do so. There is no dispute here that Hurtado did not have any authority, much less lawful authority, to use Colon's identification. We need not attempt to define every situation where transfer, possession, or use of a means of identification would be "without lawful authority." It is clear that the plain language of this phrase indicates Congress's intent to prohibit more than just the defendant's transfer, possession, or use of identification that was obtained by theft by that defendant.

This plain reading of § 1028A(a)(1) is reinforced by the fact that Congress explicitly inserted the word "stolen" three times in the preceding statutory section, 18 U.S.C. § 1028, which enumerates eight identity fraud violations. See 18 U.S.C. § 1028(a)(2), (6). "'It is well settled that where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" Griffith, 455 F.3d at 1342 (quoting Duncan v.

11

Walker, 533 U.S. 167, 173, 121 S. Ct. 2120, 2125 (2001)). If Congress intended to provide for an enhanced penalty only when an identification was stolen by a defendant and then used in the commission of another crime (such as passport fraud), it easily could have used the words "stolen" or "theft" in § 1028A(a)(1). The fact that Congress used the word "stolen" in § 1028, but chose the broader phrase "without lawful authority" in § 1028A(a)(1) plainly indicates that Congress intended to prohibit a wider range of activities in § 1028A(a)(1) than just theft.

Our reading of the phrase "without lawful authority" in § 1028A(a)(1) is consistent with the Eighth Circuit's decision in United States v. Hines, 472 F.3d 1038, 1039-40 (8th Cir.), cert. denied, ___ U.S. ___, 128 S. Ct. 235 (2007). Upon being arrested for defrauding several retailers by obtaining credit in another person's name, Hines told police that he was Joseph Miller and provided Miller's social security number. Id. at 1039. Hines later admitted to prison staff that he had used Miller's name without permission, but testified at trial that he paid Miller cash and marijuana for the use of his name. Id. In holding that evidence was sufficient to convict Hines under § 1028A(a)(1), the Eighth Circuit concluded that regardless of whether Hines used Miller's name without permission or based on consent obtained in exchange for money and illegal drugs, Hines acted without lawful authority in using Miller's identification. Id. at 1040. Thus, the Eighth Circuit's

12

decision in Hines is consistent with our conclusion that the phrase "without lawful authority" prohibits methods of obtaining another person's identification beyond stealing.

In sum, based on a plain reading of § 1028A(a)(1) and Congress's explicit use of the word "stolen" in § 1028, we conclude that § 1028A(a)(1) did not require the government to prove that Hurtado stole Colon's identity.[6]

**B.     The Knowledge Requirement**

Hurtado also argues that § 1028A(a)(1) requires the government to prove that he knew that the means of identification he was using belonged to another actual person, i.e., Colon. Hurtado does not dispute that Colon was an actual person but only that the government did not prove that he knew that.

As noted earlier, § 1028A(a)(1) provides for an enhanced penalty for anyone who, while in the commission of another enumerated felony, "knowingly transfers,

---

[6]We decline to consider the legislative history cited by Hurtado in interpreting § 1028A(a)(1). When the plain language of a statute is ambiguous or leads to absurd results, we may consult legislative history to discern congressional intent. See United States v. McNab, 331 F.3d 1228, 1236 (11th Cir. 2003). Hurtado has not argued, and we do not find, that the plain language of § 1028A(a)(1) is ambiguous. Furthermore, our reading of the plain language to prohibit the possession or use of another person's identification that was obtained by methods other than stealing does not lead to absurd results. It is not absurd to conclude that Congress also intended to deter the purchase of identification documents by money or, as shown in Hines, illegal drugs.

In addition, we need not consider the title of § 1028A ("Aggravated Identity Theft") because the phrase "without lawful authority" in § 1028A(a)(1) is plain and unambiguous. See United States v. Ferreira, 275 F.3d 1020, 1029 (11th Cir. 2001) (stating that "the title of a statutory provision may be useful only when it sheds light on some ambiguous word or phrase").

13

possesses, or uses, without lawful authority, a means of identification of another person." 18 U.S.C. § 1028A(a)(1). The fact that the word "knowingly" – an adverb – is placed before the verbs "transfers, possesses, or uses" indicates that "knowingly" modifies those verbs, not the later language in the statute. See United States v. Jones, 471 F.3d 535, 539 (4th Cir. 2006) (noting that "[a]dverbs generally modify verbs").

If Congress had intended to extend the knowledge requirement to other portions of this subsection, it could have drafted the statute to prohibit the knowing transfer, possession, or use, without lawful authority, of the means of identification "known to belong to another actual person." An extension of the knowledge requirement to the phrase "of another person" in § 1028A(a)(1), as advocated by Hurtado, would allow a defendant to use the identification of another person fraudulently in the commission of another enumerated felony so long as the defendant remains ignorant of whether that other person is real. The plain language of § 1028A(a)(1) does not dictate such a reading.[7]

Our conclusion that the word "knowingly" in § 1028A(a)(1) modifies only

---

[7]It bears repeating that the documents Hurtado had in Colon's name were (1) a birth certificate, (2) a social security card, (3) a driver's license with Hurtado's photograph, (4) a bank debit card, (5) a library card, and (6) a vehicle registration and insurance. There is no requirement of financial harm in § 1028A(a)(1) and the fact that Hurtado did not cause the real Colon financial harm is irrelevant. What Hurtado did was knowingly use a means of identification of another person, knowing full well that he was not Colon.

14

"transfers, possesses, or uses" is supported by the Fourth Circuit's decision in United States v. Montejo, 442 F.3d 213, 215 (4th Cir.), cert. denied, ___ U.S. ___, 127 S. Ct. 366 (2006), a case involving the conviction of a defendant alien who used a Resident Alien card and a Social Security card with fabricated numbers. The Fourth Circuit determined that "knowingly" does not modify the entire predicate that follows it just because it was placed at the beginning of this predicate and that "good usage" required that "knowingly" be as close as possible to the words it modifies, i.e., "transfers, possesses, or uses." Id. at 215. Thus, the Fourth Circuit concluded that to violate § 1028A(a)(1) the defendant did not need to be aware that the numbers he knowingly used had been actually assigned to an individual. Id. at 217. Similarly here, we conclude that Hurtado did not need to know that Colon was a real person to violate § 1028A(a)(1).

Hurtado relies upon the Supreme Court's decisions in United States v. X-Citement Video, Inc., 513 U.S. 64, 115 S. Ct. 464 (1994), and Liparota v. United States, 471 U.S. 419, 105 S. Ct. 2084 (1985), but neither decision addresses § 1028A(a)(1) or compels a different reading here. In X-Citement Video, the Supreme Court concluded that the term "knowingly" in 18 U.S.C. § 2252(a)(1) and (2) – a statute prohibiting the exchange through interstate commerce of depictions of minor children engaged in sexually explicit conduct – extended not only to the

15

verbs following that term (transports, ships, receives, and distributes), but also to the sexually explicit nature of the materials and the age of the children depicted therein. Id. at 78, 115 S. Ct. at 472. The Supreme Court noted that the most natural reading of the statute – to limit the application of "knowingly" to the verbs following it – would lead to the punishment of individuals who had no idea that the packages they had sent or received contained sexually explicit pictures of minors. Id. at 68-69, 115 S. Ct. at 467-68. Thus, the Supreme Court interpreted § 2252(a)(1) and (2) to require knowledge of the sexually explicit nature of the materials and the age of the children depicted in order to protect otherwise innocent conduct. Id. at 72, 115 S. Ct. at 469.

In Liparota, the Supreme Court similarly interpreted 7 U.S.C. § 2024(b)(1), the food stamp fraud statute that prohibits the knowing use, transfer, acquisition, alteration, or possession of food stamps in any manner not authorized by statute or regulation. The defendant restaurant proprietor had purchased food stamps from an undercover government agent for substantially less than their face value. Liparota, 471 U.S. at 421, 105 S. Ct. at 2086. The Supreme Court concluded that § 2024(b)(1) required knowledge that the person's conduct was not authorized by statute or regulation in order to prevent the punishment of otherwise innocent conduct, such as receiving food stamps through the mail that were mistakenly sent.

Id. at 425-27, 105 S. Ct. at 2088-89; see also Montejo, 442 F.3d at 216 (stating that "Liparota's discussion of the scope of 'knowingly' should not be understood apart from the [Supreme] Court's primary stated concern: avoiding criminalization of otherwise non-culpable conduct").

Unlike the statutes interpreted in X-Citement Video and Liparota, there is not a similar concern of criminalizing otherwise innocent activity if § 1028A(a)(1) is interpreted as not requiring knowledge that the means of identification belonged to another actual person. Hurtado's possession and use of Colon's identification documents in the course of committing another felony is not innocent activity even if Hurtado did not know that Colon was a real person. Here, Hurtado conceded that he knowingly possessed and used identification documents in a name that was not his own. This fraudulent conduct is not comparable to the conduct that concerned the Supreme Court in X-Citement Video and Liparota, such as the potential punishment of individuals who knowingly received a package containing prohibited material without having knowledge of the contents of the package. The reasoning in X-Citement Video and Liparota does not support an extension of the knowledge requirement to the phrase "of another person" in § 1028A(a)(1).

Thus, we conclude that § 1028A(a)(1) did not require the government to prove that Hurtado knew that the means of identification that he possessed and

17

used belonged to another actual person.[8]

Accordingly, we affirm Hurtado's two convictions under § 1028A(a)(1).

**AFFIRMED.**

---

[8]Hurtado also argues that, at the very least, the knowledge requirement in § 1028A(a)(1) is ambiguous and, under the rule of lenity, any statutory ambiguity should be resolved in his favor. Because the plain meaning of the knowledge requirement in § 1028A(a)(1) is unambiguous, we need not apply the rule of lenity. See Montejo, 442 F.3d at 217 (stating that the rule of lenity does not apply to § 1028A(a)(1) because it is not ambiguous); see also Salinas v. United States, 522 U.S. 52, 66, 118 S. Ct. 469, 478 (1997) ("The rule [of lenity] does not apply when a statute is unambiguous . . . ."); United States v. Maturin, 499 F.3d 1243, 1246 (11th Cir. 2007) (same).