[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 28, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-11031
Non-Argument Calendar

_____

D. C. Docket No. 08-20734-CR-MGC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RAMON FRANCISCO GOMEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 28, 2009)

Before MARCUS, PRYOR and ANDERSON, Circuit Judges.

PRYOR, Circuit Judge:

Ramon Francisco Gomez appeals his conviction for aggravated identity

theft. 18 U.S.C. § 1028A(a)(1). Gomez argues that the United States failed to prove that he knew the means of identification that he submitted to obtain a passport belonged to an actual person. Gomez made that argument in his motion for a judgment of acquittal, and he later argued that the district court had to instruct the jury that the word "knowingly" in section 1028A(a)(1) requires proof that he knew the means of identification belonged to an actual person. The district court rejected Gomez's arguments based on our earlier precedent. United States v. Hurtado, 508 F.3d 603, 609 (11th Cir. 2007). During the pendency of this appeal, the Supreme Court held in Flores-Figueroa v. United States,129 S. Ct. 1886, 1894 (2009), that section 1028A(a)(1) requires the United States to prove that the defendant knew that the means of identification at issue belonged to another person. The United States confesses error regarding the jury instruction, but argues that it was harmless. Because we cannot say the error was harmless beyond a reasonable doubt, we vacate Gomez's conviction and remand.

## I. BACKGROUND

Gomez was born in the Dominican Republic in November 1967, and more than three decades later, he entered the United States illegally through Puerto Rico. Gomez later sought employment in New York, but he was unable to obtain a job because he was an undocumented alien. Gomez later purchased for $800 a Social

2

Security card and a copy of a birth certificate for Raul Rodriguez Delgado, who was born in the Commonwealth of Puerto Rico on November 20, 1974. Gomez later obtained a job at the Ritz Carlton Hotel in Miami Beach, Florida, under Delgado's name.

In April 2008, Gomez applied for a passport. Gomez appeared in person at a post office in Miami Beach and stated under oath that he was Raul Rodriguez Delgado, a citizen of the United States. Gomez provided two forms of identification: Delgado's birth certificate and a Florida identification card issued in the name of Raul Rodriguez Delgado that bore a photograph of Gomez.

The State Department flagged Gomez's application for investigation because the agency had issued a passport in 2001 to another individual using the same identity. Agent Adam Dulin questioned Gomez about the application, and Gomez admitted that his true name was Ramon Francisco Gomez and he was not a citizen of the United States. Gomez provided a written statement in Spanish that he had purchased forms of identification from "a guy" in New York to obtain work in the United States. At the end of his statement, Gomez stated, "Forgive me for having used this identification of another person, but I had no other option." Agents searched Gomez's wallet and discovered no evidence of Gomez's true identity; agents instead discovered a Social Security card, a Florida identification card, and

3

two debit cards that had been issued in the name Raul Rodriguez Delgado.

Gomez was charged in a three-count indictment for making a false statement in an application for a passport, 18 U.S.C. § 1542, falsely representing himself as a citizen of the United States, id. § 911, and aggravated identity theft, id. § 1028A(a)(1). At trial, Gomez admitted guilt for making a false statement in his application and falsely representing himself as a citizen of the United States, but Gomez denied that he had committed aggravated identity theft.

The United States called three witnesses to prove Gomez's guilt. Alma Alvarado, a clerk at a post office in Miami Beach, Florida, testified that, to process an application for a passport, she had to request a birth certificate or form of naturalization because the applicant has to be a citizen of the United States. Alvardo stated that Gomez identified himself as Raul Rodriguez Delgado and presented two forms of identification: a birth certificate for Raul Delgado and a Florida identification card in the same name with a photograph of Gomez. Alvarado also testified that she read an oath to Gomez that required him to verify he was "a citizen, or if not a citizen, [a] national of the United States" and witnessed Gomez sign that verification.

Jorge Sierra, an investigative clerk for the Demographic Registry of Puerto Rico, testified that the birth certificate that accompanied Gomez's application for a

passport was an authentic birth certificate issued by the government of Puerto Rico. On cross-examination, Sierra testified that the birth certificate purchased by Gomez was issued by the government of Puerto Rico on August 30, 2004; citizens of Puerto Rico could present a valid identification to obtain each year up to ten copies of their birth certificate; the government kept records about copies of birth certificates only for the preceding four years; and Delgado had ordered at least one other copy of his birth certificate in 2005.

Agent Dulin testified about his investigation and Gomez's admission that he purchased "papers" in New York to obtain employment in the United States. On cross-examination, Dulin admitted that he failed in his attempts to locate Raul Rodriguez Delgado. Dulin also stated that he was "aware" that citizens of Puerto Rico had sold copies of their birth certificates. At the conclusion of Dulin's testimony, the parties stipulated that Gomez "is not and has never been a citizen of the United States" and that his statement, "which was written in Spanish[, was] truly and accurately translated into English."

Gomez moved for a judgment of acquittal and argued that the United States had failed to prove that Gomez "knew that the means of identification [he] used belonged to another person." Gomez argued that the United States failed to prove that Gomez knew the identification he purchased "was for a real person." Gomez

also argued that the United States failed to prove that Delgado was an actual person. After the district court denied Gomez's motion for an acquittal, Gomez requested that the court read his proposed charge that instructed the jury, "The term 'knowingly,' as used in this instruction, means knowledge by the defendant that the identification belonged to a real person." The district court refused to read the instruction on the ground that proof of the defendant's knowledge "has never been a requirement in the Eleventh Circuit."

In closing, the United States argued that it had proved the three elements of aggravated identity theft. The United States argued that it had introduced evidence that Gomez "knowingly possessed or used the means and identification of another person" when he submitted in support of his application for a passport a birth certificate and Florida identification card issued in the name of Raul Rodriguez Delgado, and all the forms of identification found in Gomez's wallet identified him as Delgado. The United States also argued that Gomez "needed to be able to stay in the United States" to work, "decided to steal someone's identity and he made himself into someone totally different," and in so doing Gomez "had no regard for what that would do to the true Raul Rodriguez Delgado."

Gomez argued that he came to the United States to fulfill "[t]he American dream" and "went to the streets of New York and . . . . bought the birth certificate

6

and . . . the Social Security card so he would have the ability to get a job" and not "live off of somebody else or . . . steal." Gomez admitted that he had made a false statement in his application for a passport and had falsely represented that he was a citizen of the United States, but he argued that "he was not guilty . . . of the aggravated identity theft charge." Gomez argued that "[t]he government [would] have you believe . . . [Gomez] decided to steal somebody's identity," but "[t]here [was] no evidence of that." Gomez argued that Delgado's "name [had] been used before in the past," people of Puerto Rico were known to "sell identities," and the United States failed "to show that [Gomez] came to this country and tried to hurt anybody." Gomez also argued that the United States failed to prove that Delgado was an actual person.

The United States responded that Gomez knew the birth certificate and Social Security number belonged to an actual person. The United States argued that Gomez had admitted he "used this identification of another person" and "he used a name and Social Security number of someone he believe[d] existed" to obtain a job and to try to obtain a passport.

When the district court instructed the jury about aggravated identity theft, the court stated that the government was required to prove three elements:

> [Gomez] can be found guilty of [aggravated identity theft] only if all of the following facts are proved beyond a reasonable doubt:

7

First, that the defendant knowingly possessed or used the means of identification of another person; second, that the defendant did so without lawful authority; and, third, that the defendant did so during and in relation to making a false statement in a passport application.

The district court defined the word "'knowingly,' as [the] word is used in the indictment or in [the] instructions," to "mean[] the act was done voluntarily and intentionally and not because of mistake or accident." The district court did not instruct the jury that the term "knowingly" meant the defendant knew that the means of identification belonged to an actual person.

The jury convicted Gomez of making a false statement in an application for a passport, 18 U.S.C. § 1542, falsely representing himself as a citizen of the United States, id. § 911, and aggravated identity theft, id. § 1028A(a)(1). The district court sentenced Gomez to the time he had served for his convictions for making a false statement and a false representation and to a consecutive sentence of 24 months of imprisonment for his conviction for aggravated identity theft followed by two years of supervised release.

## II. STANDARD OF REVIEW

We review de novo the jury instructions given by the district court "to determine whether they misstate the law or mislead the jury to the objecting party's prejudice." United States v. Browne, 505 F.3d 1229, 1267 (11th Cir. 2007). "A district court's failure to instruct a jury on all of the statutory elements of an

8

offense is subject to harmless-error analysis." Id. The failure to instruct a jury on an essential element of an offense is harmless when it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." Neder v. United States, 527 U.S. 1, 18, 119 S. Ct. 1827, 1838 (1999).

### III. DISCUSSION

Gomez and the United States agree, based on the recent decision of the Supreme Court in Flores-Figueroa, that the district court erred when it failed to instruct the jury that it had to find that Gomez knew that the birth certificate he possessed and used to apply for a passport belonged to another actual person. Our earlier decision to the contrary in Hurtado, 508 F.3d at 609, is no longer good law. The question that remains is whether the error in the jury instruction at Gomez's trial was harmless. We conclude it was not.

Although the United States introduced circumstantial evidence that Gomez knew Delgado was an actual person, Gomez contested that evidence. Cf. Neder, 527 U.S. at 17, 119 S. Ct. at 1837 ("[W]here a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless."). Gomez moved for a judgment of acquittal and argued in closing to the jury that the

9

United States failed to prove that Delgado was an actual person. Gomez later requested that the district court instruct the jury that, to convict him of aggravated identity theft, the jury had to find that he knew the birth certificate belonged to another person.

We cannot conclude that the error in the instruction was harmless beyond a reasonable doubt. The jury could have found that the United States failed to prove that Gomez knew the identification documents belonged to another person. Agent Dulin acknowledged on cross-examination that he had been unable to locate Delgado in Puerto Rico, which could have led the jury to question whether Delgado was an actual person. The jury also could have interpreted Gomez's apology for using the "identification of another person" to refer to the fact that the documents were not in Gomez's name.

## IV. CONCLUSION

We **VACATE** Gomez's conviction for aggravated identity theft and **REMAND** for further proceedings.