[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-10724
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 14, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 08-20965-CR-DLG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PETRONA GASPAR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 14, 2009)

Before EDMONDSON, BIRCH and FAY, Circuit Judges.

PER CURIAM:

Petrona Gaspar ("Gaspar") appeals her conviction for aggravated identity

theft in violation of 18 U.S.C. § 1028A(a)(1). Gaspar contends that the government failed to prove beyond a reasonable doubt that she knew the identification information she used belonged to another person, as required by Flores-Figueroa v. United States, ___ U.S. ___, ___, 129 S. Ct. 1886, 1894 (2009). We agree and REVERSE her conviction for aggravated identity theft.

## I. BACKGROUND

A federal grand jury indicted Gaspar in October 2008 on four counts: (1) willfully and knowingly making a false statement in a passport application, in violation of 18 U.S.C. § 1542 (Count 1); (2) falsely and willfully representing herself to be an United States citizen in an attempt to obtain an United States passport, in violation of 18 U.S.C. § 911 (Count 2); (3) knowingly possessing and using without lawful authority a means of identification of another person, that of a birth certificate in the name of "C.T.", during and in relation to a violation of § 1542, in violation of 18 U.S.C. § 1028A(a)(1) (Count 3); and (4) knowingly and willfully making a false statement in a matter within the jurisdiction of the State Department, in violation of 18 U.S.C. § 1001(a)(2) (Count 4).

In January 2009, a bench trial was held solely on Count 3, the charge of aggravated identity theft.[1] The only evidence admitted at trial was a joint

---

[1] Gaspar pled guilty to Count 1, and the court dismissed Counts 2 and 4 pursuant to the government's motion.

stipulation with accompanying exhibits submitted by the government, which

deemed the following facts "true" and "proven beyond a reasonable doubt":

1.  On October 7, 2008, the defendant, in person, applied for a United States Passport at the Miami Passport Agency . . . .  At the Miami Passport Agency, the defendant submitted an Application for U.S. Passport, Form DS-11 (Ex. C), listing her name as [C.T.], her Social Security Number as . . . , date of birth as . . ., and executing the application in the name of [C.T.].

2. The defendant's passport application listed Texas as her place of birth and contained the defendant's photograph.

3.  As proof of identity, the defendant presented a Florida Identification Card and Florida Driver's License which are both in the name of [C.T.] (Ex. A), and as proof of United States citizenship, the defendant presented a City of Weslaco, Texas birth certificate, in the name of [C.T.] (Ex. B).  The defendant signed the passport application and certified that all the answers given by her on the application were true.

4.  At the Miami Passport Agency, the defendant swore an oath before a passport acceptance clerk, who is authorized to accept passport applications, that all the information on the passport applications (sic) was true and correct.

5.  Prior to submitting the passport application, the defendant successfully obtained the Florida Driver's License and Florida Identification Card by using the City of Weslaco, Texas birth certificate, in the name of [C.T.] (Ex. B).

6.  The defendant's picture appears on the Florida Identification Card and Florida Driver's License which are both in the name of [C.T.] (Ex. A).

7.  On October 7, 2008, Special Agent Ezekiel Grimes from U.S. Department of State, Bureau of Diplomatic Security interviewed the

3

defendant at the Miami Passport Agency. . . . [L]ater in the interview, the defendant stated her real name was Petrona Gaspar, born on July 11, 1983 in Huehuetenango, Guatemala, and that she was attempting to obtain a passport to see her father who had passed away in Guatemala a few days before she submitted her passport application. The defendant stated she had entered the United States in 1999 through Mexico with the help of a "coyote." The defendant was given an "Advice of Rights" form. She read the form and signed it. . . . She stated that she bought the City of Weslaco, Texas birth certificate in Tennessee from a co-worker at a chicken packing plant.

8. [C.T.] is a real person.

9. The City of Weslaco, Texas birth certificate, in the name of [C.T.] (Ex. B), used by the defendant is a means of identification of another person.

10. The defendant did not have authority to use the City of Weslaco, Texas birth certificate, in the name of [C.T.] (Ex. B).

11. The defendant is an alien.

12. The defendant knowingly made false statements in her passport application, with the intent to secure the issuance of the passport, in that she stated in the application, among other false statements, that her name was [C.T.] and that she was a citizen of the United States, when in fact, and as the defendant knew, her name was not [C.T.] and she was not a citizen of the United States.

R1-21 at 1-3.

Following the admission of this evidence, the district court entertained Gaspar's motion for a judgment of acquittal. Gaspar acknowledged that our precedent at that time did not require the government to prove she knew that the birth certificate belonged to another actual person. See United States v. Hurtado,

4

508 F.3d 603, 610 (11th Cir. 2007) (per curiam), abrogated by Flores-Figueroa v. United States, ___ U.S. ___, 129 S. Ct. 1886 (2009).  Gaspar argued that Hurtado was wrongly decided, though, and asserted that the government should be required to prove that she knew C.T. was an actual person.  Mindful that the knowledge issue was under review by the Supreme Court, the judge responded that even if knowledge were required, he could infer from the facts in the stipulation that Gaspar knew that C.T. was a real person because "given the fact that [Gaspar] was attempting to get a passport, she would obviously want to use the documentation of an actual person because a phony person, a nonexisting person, would create problems when the passport agency attempted to run background checks, et cetera."  R2 at 12.  After further discussion, the court denied Gaspar's motion, finding that the stipulation covered the elements necessary for the government to prove its case-in-chief under Hurtado.  Alternatively, the court found that there was sufficient evidence to infer that Gaspar was knowledgeable that C.T. was a real person because Gaspar purchased the birth certificate for value and then obtained other documents in order to apply for a passport.

The defense then rested without presenting any evidence.  The court adjudicated Gaspar guilty of aggravated identity theft based on the following findings of fact:

THE COURT: Very well. Then it would seem that the Court's ruling should remain the same. The defendant has presented no evidence. The Court has to look at the evidence in the light most favorable to the government. Clearly, with respect to the elements that are of no contention, the government meets its burden of proof, and the Court would assert even as to the knowledge issue as it relates to [C.T.], the Court finds that there is sufficient evidence to find the defendant guilty, beyond a reasonable doubt standard even, and accordingly the motion is denied. And for the reasons stated, the defendant is guilty of the crime charged for the following reason:

The Court adopts the stipulation as the findings of fact in this [case], and accordingly, based upon the stipulation, the Court finds that the defendant knowingly, that is, intentionally and not because of mistake or accident, possessed and used, without any lawful authority, a means of identification of another person, and that other person was [C.T.]. And as an aside, . . . the Court finds that there is sufficient evidence that the defendant knew that [C.T.] was an actual person.

Id. at 16-17. The court sentenced Gaspar on Count 3 to twenty-four months of imprisonment and two years of supervised release.[2]

On appeal, Gaspar contends that her conviction for aggravated identity theft must be vacated because the government failed to prove that Gaspar knew that the means of identification she used belonged to another person. She contends that our decision to the contrary in Hurtado was wrongly decided, as evidenced by the Supreme Court's recent decision in Flores-Figueroa.[3]

---

[2] With respect to Gaspar's conviction on Count 1, the court imposed a consecutive sentence of one day of imprisonment and a concurrent term of two years of supervised release.

[3] Gaspar also argues for the first time in her reply brief that her conviction must be vacated because she never waived her right to a jury trial as to whether she knew the means of identification she used belonged to another person. Because she did not raise this issue in her

## II. DISCUSSION

We review <u>de novo</u> the sufficiency of the evidence to uphold a conviction. <u>See</u> <u>United States v. Tampas</u>, 493 F.3d 1291, 1297 (11th Cir. 2007). "We will not reverse a conviction for insufficient evidence in a non-jury trial unless, upon reviewing the evidence in the light most favorable to the government, no reasonable trier of fact could find guilt beyond a reasonable doubt." <u>United States v. Schaltenbrand</u>, 930 F.2d 1554, 1560 (11th Cir. 1991). We review a district court's bench trial findings of fact for clear error. <u>See</u> <u>O'Ferrell v. United States</u>, 253 F.3d 1257, 1265 (11th Cir. 2001).

The aggravated identity theft provision requires an enhanced sentence of two years of imprisonment if a person "during and in relation to any felony violation enumerated in subsection (c), *knowingly* transfers, possesses, or uses, without lawful authority, a means of identification of another person . . . ." 18 U.S.C. § 1028A(a)(1) (emphasis added). At the time of Gaspar's conviction, our sister circuits were divided as to whether the knowledge requirement applied to "of another person." <u>Compare</u> <u>United States v. Godin</u>, 534 F.3d 51, 61 (1st Cir. 2008) (knowledge requirement applies to "of another person"); <u>United States v. Miranda-Lopez</u>, 532 F.3d 1034, 1040 (9th Cir. 2008) (same); <u>United States v. Villanueva-</u>

initial brief, we will not address it. <u>See</u> <u>United States v. Valladares</u>, 544 F.3d 1257, 1269 n.2 (11th Cir. 2008) (per curiam).

7

Sotelo, 515 F.3d 1234, 1246 (D.C. 2008), cert. denied, ___ U.S. ___, 129 S. Ct. 2377 (2009) (same), with United States v. Mendoza -Gonzalez, 520 F.3d 912, 915 (8th Cir. 2008), vacated, ___ U.S. ___, 129 S. Ct. 2377 (2009) (knowledge requirement does not apply to "of another person"); United States v. Montejo, 442 F.3d 213, 215 (4th Cir. 2006) (same).  We had agreed with those circuits concluding that the government need not prove that the defendant knew the identification used belonged to another actual person.  See Hurtado, 508 F.3d at 610.

After the initial briefs were filed in this appeal, the Supreme Court resolved the circuit split in Flores-Figueroa.  The Court held that "§ 1028A(a)(1) requires the Government to show that the defendant knew that the means of identification at issue belonged to another person."  Flores-Figueroa, ___ U.S. at ___, 129 S. Ct. at 1894.  The defendant in Flores-Figueroa had worked for six years under a false name, using a Social Security number and alien registration number that did not belong to a real person.  See id. at ___, 129 S. Ct. at 1889.  He then presented his employer with new counterfeit Social Security and alien registration cards using his real name but with numbers that were assigned to actual people.  See id. at ___, 129 S. Ct. at 1889.  The Eighth Circuit Court of Appeals affirmed his conviction based on the district court's determination that the government need not prove that

8

the defendant knew the numbers on the counterfeit documents had been allocated to other people. See id. at ___, 129 S. Ct. at 1889. The United States Supreme Court reversed, concluding that the word "knowingly" applied to all the subsequently listed elements of the crime, including the phrase "of another person." See id. at ___, 129 S. Ct. at 1890, 1894.

The Court noted that the examples of identity theft given by Congress in its legislative history all involved situations "where the offender would know that what he has taken identifies a different real person." See id. at ___, 129 S. Ct. at 1893. These instances include computer hacking, stealing paperwork likely to contain personal information, and dumpster diving (rifling through another person's trash for credit card and bank statements). See id. at ___, 129 S. Ct. at 1893. Intent would be fairly easy to prove in such classic cases of identity theft. See id. at ___, 129 S. Ct. at 1893. However, the Court acknowledged that proof of knowledge would be more difficult in many other circumstances. See id. at ___, 129 S. Ct. at 1893. For example, an alien who uses a false identification document to obtain employment may not care whether the document belongs to a real person or is simply a counterfeit paper. See id. at ___, 129 S. Ct. at 1893. In that circumstance, the government may be able to prove the defendant knew the document was not his, but would have difficulty in proving beyond a reasonable

9

doubt that the defendant knew the document actually belonged to another real person. See id. at ___, 129 S. Ct. at 1893. Nevertheless, the Court concluded that any "concerns about practical enforceability are insufficient to outweigh the clarity of the text." Id. at ___, 129 S. Ct. at 1893.

"It is the law of this Circuit that a subsequent panel is not obligated to follow a prior panel's decision where an intervening Supreme Court decision establishes that the prior panel decision is wrong." United States v. Hogan, 986 F.2d 1364, 1369 (11th Cir. 1993). The intervening Supreme Court decision must have actually overruled or conflicted with the prior panel decision in order to warrant a departure. See United States v. Marte, 356 F.3d 1336, 1344 (11th Cir. 2004). Here, the Supreme Court's decision in Flores-Figueroa directly conflicts with our holding in Hurtado that the government need not prove the defendant knew that the identification means he used belonged to another person. See Flores-Figueroa, ___ U.S. at ___, 129 S. Ct. at 1894; Hurtado, 508 F.3d at 610. In accordance with the Supreme Court's ruling, we may affirm Gaspar's conviction for aggravated identity theft only if the government proved beyond a reasonable doubt that Gaspar knew the birth certificate she used in applying for a passport in fact belonged to another person. See Flores-Figueroa, ___ U.S. at ___, 129 S. Ct. at 1894.

Our review of the evidence reveals that the government did not meet its

burden of proof. The hypothetical envisioned by the Supreme Court in Flores-Figueroa, that of an alien using another person's document to procure employment, is strikingly analogous to the situation here, that of an alien using another person's document to procure a passport. As in the hypothetical, the government can prove that the defendant knew the document was not his. Here, there is no dispute that Gaspar knew she was using a birth certificate that was not hers. The government stumbles both in the hypothetical and in this case, however, in trying to prove that the defendant knew the document belonged to a real person.

As the government implicitly concedes, there is no direct evidence that Gaspar knew the birth certificate belonged to an actual person at the time she applied for the passport. Although it was stipulated that the birth certificate was in fact a means of identification of a real person (C.T.), it was not stipulated that Gaspar knew that C.T. existed when she used the document to obtain a passport. The government presumably did not include this element in the joint stipulation given that Hurtado did not require it. Consequently, there is no evidence that Gaspar ever met or spoke with C.T. (who was born in Texas), or that the co-worker who sold the birth certificate to Gaspar in Tennessee mentioned that C.T. was a real person.

Nor is intent readily proven from the circumstances of the case given that

11

Gaspar did not commit classic identity theft. She did not search another person's trash, hack into someone's computer account, or pretend to be someone else to obtain personal information. Rather, Gaspar bought a document from a co-worker, and later agreed, after the fact, that the document identified a real person.

Given this dearth of evidence, we conclude that the district court's finding that Gaspar knew that C.T. was a real person is clearly erroneous. That finding was based on the court's inference that Gaspar would "obviously want to use the documentation of an actual person" in order to pass a background check run by the passport agency. R2 at 12. The court's inference is refuted by the factual scenario in Flores-Figueroa, where the defendant remained employed for six years using a Social Security number and counterfeit alien registration card that did not belong to a real person. See Flores-Figueroa, ___ U.S. at ___, 129 S. Ct. at 1889. As that case demonstrates, an individual can successfully use documents that do not belong to a real person in order to secure benefits such as employment, even though employers also presumably run background checks. In any event, even if the district court's inference was valid, at most it proves that Gaspar might have an incentive to buy an authentic birth certificate, not that she knew whether she actually purchased one.

We therefore conclude that the evidence, even when viewed in the light most

12

favorable to the government, is insufficient for a rational trier of fact to find beyond a reasonable doubt that Gaspar knew that the birth certificate belonged to another person when she used it for her passport application. Accordingly, Gaspar's conviction for aggravated identity theft cannot stand. See id. at ___, 129 S. Ct. at 1889.

## III. CONCLUSION

For the foregoing reasons, we REVERSE Gaspar's conviction on count three for aggravated identity theft under § 1028A(a)(1), REMAND for entry of acquittal, and VACATE the sentence imposed as to that count.

**REVERSED and REMANDED.**