[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12577
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-20868-CMA-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANKI JOSEPH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 29, 2014)

Before CARNES, Chief Judge, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Franki Joseph, a Haitian national, challenges his convictions for impersonating a United States citizen, making a false statement on a United States passport application, and aggravated identity theft.  He also challenges part of his 35-month sentence.

I.

Joseph used the birth certificate of Christopher Donnell Stevens, a United States citizen, to obtain a Florida identification card that bore Stevens' name but his own photograph.  Joseph then applied for a United States passport using:  (1) the fraudulently obtained Florida identification card; (2) another photograph of himself; and (3) Stevens' name, date of birth, social security number, and birth certificate.  The State Department officials who reviewed the passport application quickly detected the ruse, and a federal grand jury later indicted Joseph on three counts:  false impersonation of a citizen, in violation of 18 U.S.C. § 911 (Count 1); making a false statement on a passport application, in violation of 18 U.S.C. § 1542 (Count 2); and aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count 3).

At trial the government presented evidence of Joseph's guilt on all three counts.  The evidence included testimony from the real Christopher Donnell Stevens, who said that he did not know Joseph, as well as testimony from various

2

state and federal officials who verified that Joseph had used Stevens' identity when applying for a passport.

Joseph chose to testify in his own defense. But instead of challenging the accusations against him, he made a number of concessions. He conceded that he was a foreign national, that he had falsely claimed to be Stevens, and that he had knowingly applied for a passport using Stevens' identity. He also conceded that he was not legally entitled to a United States passport. Joseph said, nonetheless, that he thought he could file an application in Stevens' name as long as Stevens knew about it. He also said that he thought that Stevens knew what he was doing.

The rest of Joseph's testimony was devoted to his life story. In response to defense counsel's questions, he described himself as an honest, hard-working, law-abiding young man who had broken the law not out of malice but out of a desire to visit his mother in Haiti — a trip for which he said he needed a United States passport. The government objected to his testimony at several points, arguing that Joseph appeared to be playing to the jury's sympathies in hopes of winning a jury nullification verdict.[1] But those objections were overruled.

In closing argument, defense counsel returned to Joseph's life story and his allegedly good character. Counsel said: "[Joseph] lived a lawful life up to the

---

[1] A defendant seeking a jury nullification verdict wants the jury to use its "de facto power to refuse to apply the law as instructed by the court," even though the "exercise of such power is in dereliction of the jury's sworn duty." United States v. Funches, 135 F.3d 1405, 1408 (11th Cir. 1998) (emphasis omitted).

3

certain point when he applied for the U.S. passport. Okay. You can't discount the fact that Mr. Joseph was an honorable and a contributing member of our society." The government objected once more, and that time the objection was sustained. In its closing argument, the government referred to defense counsel's comments about Joseph's character. It said that Joseph's honor and social contributions were relevant to his sentence, but not to the jury's decision about his guilt. Joseph did not object. The jury found Joseph guilty on all three counts.

Joseph's presentence investigation report (PSR) grouped Counts 1 and 2 together as required by United States Sentencing Guideline § 3D1.2(b); Count 3 was excluded from grouping under § 3D1.1(b)(2). Together, Counts 1 and 2 resulted in a base offense level of 8 under § 2L2.2(a), to which the PSR added a 4-level enhancement under § 2L2.2(b)(3) because Joseph had attempted to fraudulently obtain a United States passport. The PSR gave him no credit for acceptance of responsibility, leaving Joseph with a total offense level of 12 on Counts 1 and 2. Combining that total offense level with Joseph's criminal history category of I yielded a guidelines range of 10–16 months on Counts 1 and 2. As for Count 3, the language of 18 U.S.C. § 1028A(a)(1) required that Joseph serve a mandatory two-year term of imprisonment to run consecutive to any other term of imprisonment he received for Counts 1 and 2. See 18 U.S.C. § 1028A(a)(1);

4

U.S.S.G § 5G1.2(a).  As a result, Count 3 was not factored into his guidelines range.

Joseph objected to the PSR, contending that he deserved a 2-level reduction in his total offense level for Counts 1 and 2 for acceptance of responsibility.  He also argued for a downward variance with respect to Counts 1 and 2 under 18 U.S.C. § 3553(a).  The district court denied Joseph's request for an acceptance-of-responsibility reduction, noting that he had gone to trial not to accept responsibility but to win a jury nullification verdict.  The court then denied his request for a downward variance, finding it to be unwarranted.  Joseph was sentenced to concurrent terms of 11 months on Counts 1 and 2, with a consecutive term of 24 months on Count 3, making his total sentence 35 months imprisonment.

## II.

Joseph raises four issues on appeal.  First, he challenges his conviction on Count 3 for aggravated identity theft on the ground that there was insufficient evidence to establish that he used Stevens' means of identification "without lawful authority."  Second, he contends that the district court improperly restricted his closing argument while failing to restrict later, improper statements made by the government in its response.  Third, he contends that the court improperly calculated his guidelines range by not crediting him with a 2-level reduction for acceptance of responsibility.  Fourth, he contends that his sentences on Counts 1

and 2 are substantively unreasonable because the district court failed to properly weigh the 18 U.S.C. § 3553(a) factors.

## A.

Joseph contends that the evidence presented at trial was insufficient to establish that he used Stevens' means of identification "without lawful authority," as required to prove Count 3, aggravated identity theft. See 18 U.S.C. § 1028A(a)(1). Though he twice moved at trial for a judgment of acquittal under Rule 29 on grounds of insufficient evidence, he makes this particular argument for the first time on appeal. As a result, we review it only for plain error. See United States v. Joseph, 709 F.3d 1082, 1103 (11th Cir. 2013) (applying plain error review where the defendant moved at trial for a judgment of acquittal under Rule 29 on grounds of insufficient evidence but failed to make the argument at trial that he made on appeal). Joseph bears the burden of showing that there is "(1) an error, (2) that is plain, (3) that affects [his] substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. De La Garza, 516 F.3d 1266, 1269 (11th Cir. 2008).

There are several ways a defendant can commit aggravated identity theft under 18 U.S.C. § 1028A. One way is if he (1) knowingly possessed or used (2)

6

another person's means of identification[2] (3) without lawful authority (4) during or in relation to the felony of making a false statement in a United States passport application.  See 18 U.S.C. § 1028A(a)(1), (c); see also Flores-Figueroa v. United States, 556 U.S. 646, 647, 129 S.Ct. 1886, 1888 (2009).  The only issue here is whether the government properly proved the third element, that Joseph used Stevens' means of identification "without lawful authority."  The government need not show that a defendant stole another person's means of identification in order to establish that he used it without lawful authority.  See United States v. Hurtado, 508 F.3d 603, 607–08 (11th Cir. 2007), abrogated on other grounds by Flores-Figueroa, 556 U.S. 646, 129 S.Ct. 1886; United States v. Lumbard, 706 F.3d 716, 725 (6th Cir. 2013) (concluding "that the phrase 'without lawful authority' in § 1028A is not limited to instances of theft").  The government can establish that a defendant used another's means of identification "without lawful authority" by showing that the defendant used it without permission.  See United States v. Hines, 472 F.3d 1038, 1040 (8th Cir. 2007) (holding that a defendant's use of a person's name and social security number without permission constituted the use of a means

---

[2] "Means of identification" is defined as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual."  18 U.S.C. § 1028(d)(7)(A).  Examples include, among other things, a name, social security number, date of birth, and official driver's license.  Id.; see also United States v. Hurtado, 508 F.3d 603, 607 n.4 (11th Cir. 2007), abrogated on other grounds by Flores-Figueroa v. United States, 556 U.S. 646, 129 S.Ct. 1886 (2009).  Joseph testified at trial that he used a number of Stevens' means of identification, including his name, birth date, birth certificate, and social security number.

of identification "without lawful authority").  Or the government can establish that a defendant used another's means of identification without lawful authority by showing that, even if he took the means of identification with permission, he used it for an unlawful or illegitimate purpose.  See United States v. Reynolds, 710 F.3d 434, 436 (D.C. Cir. 2013) ("'[U]se[] . . . without lawful authority' easily encompasses situations in which a defendant gains access to identity information legitimately but then uses it illegitimately — in excess of the authority granted."); United States v. Ozuna-Cabrera, 663 F.3d 496, 499 (1st Cir. 2011) ("[R]egardless of how the means of identification is actually obtained, if its subsequent use breaks the law . . . [,] it is violative of § 1028A(a)(1)."); see also United States v. Retana, 641 F.3d 272, 273, 274–75 (8th Cir. 2011); United States v. Mobley, 618 F.3d 539, 547–48 (6th Cir. 2010); United States v. Abdelshafi, 592 F.3d 602, 608 (4th Cir. 2010).

Here, the government established the element of "without lawful authority" in two ways — with evidence that Joseph did not have permission to use Stevens' means of identification and with evidence that Joseph used Stevens' means of identification for an unlawful purpose.  First, Stevens testified that he did not know Joseph.  From that testimony, a reasonable jury could have inferred that Stevens did not give Joseph permission to use his means of identification.  Second, even assuming Stevens authorized Joseph to use his means of identification, Joseph

8

admitted that he used it for an unlawful purpose — to apply for a United States passport he was not entitled to receive.  That admission alone was enough to prove that Joseph used the means of identification without lawful authority.  The jury had plenty of evidence to find all the elements of Count 3.  The district court did not err, much less plainly err, in denying Joseph's motions for a judgment of acquittal with respect to Count 3.[3]

## B.

Joseph next contends that the district court erred twice during closing arguments.  First, he asserts that the court impermissibly restricted his closing argument by sustaining the government's objection to the statement of defense counsel that Joseph was an honorable and contributing member of society. Second, he asserts that the district court erred in allowing the government in its rebuttal to say that his honor and social contributions were relevant to his sentence but not to his guilt.

We review the limitations that a district court places on a defendant's closing argument only for abuse of discretion.  See United States v. Gaines, 690 F.2d 849, 858 (11th Cir. 1982).  Under that standard, we will reverse the district court for limiting a defendant's closing argument only when the defendant is deprived of the "opportunity to make all legally tenable arguments that are

---

[3] Joseph challenges his conviction on Count 3 on other grounds, but those arguments do not merit discussion.

9

supported by the facts of the case." Id.  Despite his assertions to the contrary, the only arguments denied to Joseph by the district court were ones that were not legally tenable.

The district court found at sentencing that Joseph pursued a jury nullification strategy, a finding that Joseph does not challenge.  Defense counsel's statements about Joseph's honor and social contributions were part and parcel of that strategy. This Court has repeatedly disapproved of jury nullification.  United States v. Funches, 135 F.3d 1405, 1409 (11th Cir. 1998) ("[Jury nullification] verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power.") (quoting United States v. Washington, 705 F.2d 489, 494 (D.C. Cir. 1983)).  And we have held that "defense counsel may not argue jury nullification during closing argument."  United States v. Trujillo, 714 F.2d 102, 106 (11th Cir. 1983).  As a result, when the district court restricted defense counsel's comments about Joseph's honor and social contributions — comments that were part of his jury nullification efforts — the court did not deny Joseph the opportunity to make a legally tenable argument.  Instead, it kept him from making impermissible arguments.  See id. at 106.  By the same logic, the district court properly permitted the government's fair response in its closing argument.  See United States v. Frank, 599 F.3d 1221, 1238 (11th Cir. 2010).  Joseph did not object to the government's statements that his honor and social contributions were relevant to his sentence but

10

not his guilt, and there would have been no basis for that objection anyway. <u>See</u> <u>id.</u>

C.

In the first of his two challenges to his sentence, Joseph contends that the district court improperly calculated his guidelines range by failing to credit him with a 2-level reduction for acceptance of responsibility. We review a district court's acceptance-of-responsibility determination for clear error. <u>United States v.</u> <u>Amedeo</u>, 370 F.3d 1305, 1320 (11th Cir. 2004). We will set aside a district court's determination that a defendant did not accept responsibility only if the record clearly establishes that the defendant in fact accepted responsibility. <u>Id.</u> at 1320–21. Here, the record does not support the conclusion that Joseph accepted responsibility.

Instead of pleading guilty, Joseph went to trial. Of course, going to trial does not automatically preclude a defendant from receiving a reduction for acceptance of responsibility. A defendant may go to trial yet still be found to have accepted responsibility in "rare situations," such as where he wants to assert and preserve issues related to the constitutionality of a law or where he wants to assert or preserve issues related to the applicability of a law to his conduct. <u>See</u> U.S.S.G. § 3E1.1 cmt. n.2. The record here is clear, however, that Joseph did not go to trial to assert or preserve legal issues of any sort. He sought only to preserve his

11

freedom through a jury nullification verdict.  His argument that, despite that fact, he somehow accepted responsibility for his crimes is meritless.  The district court did not clearly err in finding that Joseph had not accepted responsibility.

## D.

In the second of his two challenges to his sentence, Joseph asserts that his concurrent 11-month sentences on Counts 1 and 2 are substantively unreasonable because the district court failed to give proper weight to the sentencing factors in 18 U.S.C. § 3553(a).  We review the reasonableness of a sentence only for abuse of discretion.  United States v. Thompson, 702 F.3d 604, 606–07 (11th Cir. 2012).  Under that standard, we will vacate a sentence only if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors and arrived at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.  United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc).

Joseph contends that the district court gave too little weigh to two of the § 3553(a) factors:  (1) the nature and circumstances of the offense and (2) the history and characteristics of the defendant.  He asserts that at the same time the court gave too much weight to a third § 3553(a) factor:  (3) the need for a sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.  We disagree.

12

A district court has substantial discretion in weighing the sentencing factors, and it may give more weight to some factors than others.  See United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007) ("The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court . . . .") (quotation marks omitted).  Here, the court did give some weight to the first two sentencing factors, which cover Joseph's personal story and the story underlying his offenses.  In fact, it discussed the evidence related to those two factors at length, finding that Joseph had lived a better, more law-abiding life than many of the defendants whom the district court typically sees.

But the court determined that while those two factors might support leniency, the third factor — the factor that covers the seriousness of Joseph's offenses and his respect (or lack thereof) for the law — outweighed them both. We agree.  Although Joseph committed serious crimes, he refused to take responsibility for his actions.  His actions demonstrated a lack of respect for the law.  And the district court properly exercised its discretion by assigning more weight to that factor than to the other two.  We do not have the definite and firm conviction that the court committed a clear error of judgment by weighing the factors the way it did.  See Irey, 612 F.3d at 1190

Nor do we believe that Joseph's 11-month sentences on Counts 1 and 2, which he will serve concurrently, lie outside the range of reasonable sentences

dictated by the facts of the case.  See id.  We note that both sentences are within Joseph's guidelines range of 10–16 months and are therefore expected to be reasonable.  See United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008) ("Although we do not automatically presume a sentence within the guidelines range is reasonable, we ordinarily expect a sentence within the Guidelines range to be reasonable.") (ellipsis and quotation marks omitted).  We also note that, at 11 months each, Joseph's concurrent sentences are substantially shorter than the sentences he could have received.  He could have received up to 36 months on Count 1, see 18 U.S.C. § 911, and up to 120 months on Count 2, see 18 U.S.C. § 1542.  The fact that his sentences are far below those statutory maximums further supports the conclusion that they are reasonable.  See United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008).

For those reasons, we conclude that the district court did not abuse its discretion in sentencing Joseph to concurrent, 11-month sentences on Counts 1 and 2.

**AFFIRMED.**