# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

v.

JOE TONY SIMMONS,
      *Defendant-Appellant.*

No. 00-4131

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CR-99-298-A)

Argued: January 22, 2001

Decided: April 16, 2001

Before WILKINSON, Chief Judge, NIEMEYER, Circuit Judge,
and Malcolm J. HOWARD, United States District Judge for the
Eastern District of North Carolina, sitting by designation.

---

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Chief Judge Wilkinson and Judge Howard joined.

---

## COUNSEL

**ARGUED:** Michael William Lieberman, Alexandria, Virginia, for
Appellant. Orin Samuel Kerr, Special Assistant United States Attor-
ney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria,
Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States
Attorney, Justin W. Williams, Assistant United States Attorney,

OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

---

**OPINION**

NIEMEYER, Circuit Judge:

Joe Tony Simmons challenges his convictions for concealing goods that were "*feloniously* taken, stolen, or embezzled" while on federal property, in violation of 18 U.S.C. § 662, arguing that the property involved — two cellular telephones — while proved to have been stolen, was not proved to have been the subject of a *felony* theft. The district court rejected the construction urged by Simmons and interpreted "feloniously taken," as used in § 662, to mean "tak[en] with intent to steal." Because the evidence showed that the cellular telephones had been stolen, the court convicted him. We affirm.

I

While driving a red Honda Civic del Sol in Langley, Virginia, in August 1999, Simmons took a wrong turn. Hoping to remedy the situation, he quickly pulled into the nearest parking lot, which happened to be that of the Central Intelligence Agency headquarters. CIA Police Officer Terry Weatherford approached Simmons, briefly detaining him, and ran a routine check of his driver's license and license plate tags. The officer discovered that the suspension of Simmons' license was pending and that the Honda had been reported as stolen. Officer Weatherford thereupon placed Simmons under arrest, and a subsequent search of the Honda uncovered, among other things, two cellular telephones, which had been placed inside a knapsack left on the passenger seat. An investigation revealed that both cellular telephones also had been reported as stolen several months earlier from automobiles in parking garages in Arlington, Virginia, and Washington, D.C.

Simmons was indicted for one count of grand larceny for the theft of the Honda and three counts of receiving and concealing stolen property, i.e., the Honda, a Nokia brand cellular telephone, and an Ericsson brand cellular telephone. The indictment alleged that each

telephone had been "feloniously taken and stolen" and had a value under $1,000.

Following a bench trial, the district court convicted Simmons on the two counts relating to the concealment of the cellular telephones, in violation of 18 U.S.C. § 662. Although Simmons conceded that the telephones were stolen, he contended that the government was required to prove that the underlying theft of the telephones was a felony. Because the government offered no such proof, Simmons asserted that the evidence was insufficient to convict him. The district court acknowledged that the government had offered no evidence that the thefts of the cellular telephones were felonies, but rejected Simmons' argument that the government had the burden of proving that fact to obtain a conviction under § 662. The court stated that

> the proper construction of the word "felonious" . . . is as a descriptor of the word "taking," and so there are three activities that are covered by 662: felonious takings, stealing, and embezzlement, and if the property was obtained in [any] of those three manners, . . . then that element of the offense is satisfied.

The district court sentenced Simmons to 24 months imprisonment, and this appeal followed.

## II

The single issue presented in this case is whether Congress, in criminalizing the receipt or concealment of money or goods "feloniously taken, stolen, or embezzled," 18 U.S.C. § 662, intended to require proof that the original taking, theft, or embezzlement of money or goods was a felony. Simmons contends that "Congress intended the [statute] to cover only the receipt of property the theft of which was a felony" and therefore that, because there was no evidence that the theft of the cellular telephones was a felony, his convictions must be reversed. He advances several arguments in support of this contention.

First, he states that in construing a statute, courts should accord

words "their ordinary, contemporary common meaning." Upon consulting *Black's Law Dictionary*, he notes that "feloniously" can mean "[o]f, pertaining to, or having, the quality of [a] felony," *or* "acting with intent to commit a felony," *or* "done with a deliberate intention of committing a crime." *Black's Law Dictionary* 555 (5th ed. 1979).[1] To advance a meaning of "feloniously" that ascribes to it "having the quality of a felony" rather than "with a deliberate intention," Simmons argues that "feloniously" as used in § 662 modifies not only "taken," but also "stolen" and "embezzled." Because steal and embezzle already have criminal intent inherent within their definitions, he contends that "feloniously" must be given its other meaning — that which has "the quality of [a] felony." He adds that a subsequent clause in § 662 — "knowing the same to be *so* taken, stolen, or embezzled" (emphasis added) — confirms his construction.

Second, Simmons argues that because Congress enacted two different statutes pertaining to the receipt of stolen property on June 25, 1948, *see* 18 U.S.C. § 662 and 18 U.S.C. § 2314, and used the term "feloniously" in one but not the other, the "difference demonstrates Congressional intent that the federal government should only get involved in prosecuting [under § 662] what is otherwise a state offense only if the underlying theft is serious enough to be characterized as a felony." In short, because the statutes were enacted on the same date, he posits, the distinction made between the two statutes was both deliberate and revealing.

Finally, Simmons argues that in presenting this case to the grand jury, the government "took the position that 'feloniously' referred to the value of the property stolen being sufficient to constitute a felony when it was stolen." Urging the application of the doctrine of judicial estoppel, *see John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28-29 (4th Cir. 1995), he maintains that "the government should not now be heard to argue to the contrary."

---

[1]Simmons recognizes that after defining "feloniously," *Black's Law Dictionary* defines "felonious taking" in the following manner: "As used in crimes of larceny and robbery, it is the taking *with intent to steal*." *Id.* (emphasis added). He dismisses this difficulty by arguing that "while the term 'felonious taking' is a term of art that refers to a taking with intent to steal . . . the term 'feloniously taken' is not such a term of art, and thus is not entitled to be treated as such."

The government, on the other hand, contends that the historical record establishes overwhelmingly that the phrase "feloniously taken," as used in 18 U.S.C. § 662, was intended to incorporate the traditional usage of the common law as reflected in stolen goods statutes going back to at least the Seventeenth Century. This settled history establishes conclusively, according to the government, that "feloniously taken" is a term of art that means "taken with intent to steal." The government admonishes that to construe the statute otherwise would lead to absurd results because "[w]hether a theft happens to constitute a felony according to state law can hinge on unforeseen details of where, when, and how the theft occurred, as well as how the state happens to classify its crimes." It observes that a statute that would provide for such uneven treatment would be "a curious statute indeed."

When interpreting a statute, our inquiry begins with the text.[2] Because, in the case of 18 U.S.C. § 662, Congress did not provide a definition for the term "feloniously," we determine its meaning by reference to the term's ordinary meaning at the time of the statute's enactment. *See MCI Telecomms. Corp. v. AT&T Co.*, 512 U.S. 218, 228 (1994); *Perrin v. United States*, 444 U.S. 37, 42 (1979). And to do this, we must look back further than the 1948 enactment of § 662, which was, in material respects, merely a reenactment of an 1825 statute, which in turn drew upon the common law. Therefore, we will begin with the common law and trace the pedigree of § 662, coming forward.

---

[2]The text of 18 U.S.C. § 662 reads:

> Whoever, within the special maritime and territorial jurisdiction of the United States, buys, receives, or conceals any money, goods, bank notes, or other thing which may be the subject of larceny, which has been feloniously taken, stolen, or embezzled, from any other person, knowing the same to have been so taken, stolen, or embezzled, shall be fined under this title or imprisoned not more than three years, or both; but if the amount or value of thing so taken, stolen or embezzled does not exceed $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

At common law, "feloniously taken" was a well-established term of art meaning "taken with intent to steal." *See* 4 William Blackstone, *Commentaries* \*232 ("This taking and carrying away must also be *felonious*, that is, done *animo furandi* (with the intention of stealing): or, as the civil law expresses it, *lucri causa* (for the sake of gain)"); Clark & Marshall, *A Treatise on the Law of Crimes* § 12.04, at 729-30 (Melvin F. Wingersky ed., 6th ed. 1958) (stating that a taking is not felonious unless the taker *fraudulently intends* "to deprive the *owner* of his property, and to deprive him of it *permanently*").

The phrase made its first statutory appearance in 1692, when the English Parliament enacted a statute prohibiting the purchase or sale of "goods or chattels, that shall be feloniously taken or stolen from any other person, knowing the same to be stolen." 3 W. & M., c.9 (1692) (Eng.), *cited in United States v. Moulton*, 27 F. Cas. 11, 15 (D. Mass. 1830) (No. 15,827). The near synonymity of the terms "feloniously taken" and "stolen" at that time is evident in the statute's requirement that the defendant know only that the goods were stolen, even though they may actually have been stolen *or* feloniously taken.

In this country, various states parroted the language of the English statute when they enacted similar provisions in their own criminal codes. *See*, *e.g.*, *State v. Ryan*, 48 So. 537, 538 (La. 1909) (construing a Louisiana statute prohibiting the receipt of goods "that shall have been feloniously taken, stolen, embezzled or by false pretenses obtained, from any other person"); *State v. Crawford*, 17 S.E. 799, 801 (S.C. 1893) (construing a South Carolina statute criminalizing the knowing receipt of goods "feloniously taken or stolen by any person or persons"). The federal government did the same, enacting a law in 1825 that read:

> [I]f any person or persons, upon the high seas, or any of the places aforesaid, shall buy, receive, or conceal, or aid in concealing any money, goods, bank notes, or other effects or things which may be the subject of larceny, *which have been feloniously taken or stolen*, from any other person, knowing the same to have been taken or stolen, every person, so offending, shall be deemed guilty of a misdemeanor.

Act of Mar. 3, 1825, ch. 65, § 8, 4 Stat. 116 (codified at 70 U.S.C. § 5357 (1901)) (emphasis added). This statute was the direct pre-

decessor of the similarly worded 18 U.S.C. § 662, which Congress moved to its current location in the United States Code in 1948. Although legally significant alterations were made to the 1825 statute with the 1948 enactment and subsequent amendments, the critical language at issue in this case — "feloniously taken" — has endured in the same form.

When Congress incorporates into a criminal statute a term of art that has "accumulated the legal tradition and meaning of centuries of practice" under the common law, *Morissette v. United States*, 342 U.S. 246, 263 (1952), we presume that the term's historical meaning is also retained in the federal Code. *See Neder v. United States*, 527 U.S. 1, 22 (1999); *Evans v. United States*, 504 U.S. 255, 259 (1992); *United States v. Turley*, 352 U.S. 407, 411 (1957). And it is abundantly clear that at common law, "feloniously taken" meant simply taken with intent "to deprive the owner of his rights of ownership." *United States v. Handler*, 142 F.2d 351, 354 (2d Cir. 1944) ("In using the terms 'stolen, feloniously converted, or taken feloniously by fraud or with intent to steal or purloin' in the National Stolen Property Act, the legislators employed expressions of 'well and long-known legal and popular meaning'" (quoting *Russell v. United States*, 119 F.2d 686, 688 (8th Cir. 1941))).

Indeed, while many jurisdictions have "modernized" their receipt-of-stolen-goods statutes by replacing this term of art with a more familiar synonym such as "stolen," *see*, *e.g.*, S.C. Code Ann. § 16-13-180, the association between the term of art and its traditional definition is sufficiently strong that its common-law meaning continues to be ingrained in contemporary legal culture. *See*, *e.g.*, *Carter v. United States*, 120 S. Ct. 2159, 2169 (2000) (noting that "all agree" that the adverb "feloniously," which modified the term "takes" in a version of 18 U.S.C. § 2113(a) enacted in 1934, "is equivalent to 'intent to steal'"); *Black's Law Dictionary* 616 (6th ed. 1990) ("As used in the crimes of larceny and robbery, ['felonious taking'] is the taking with intent to steal"). Thus, following the "familiar 'maxim that a statutory term is generally presumed to have its common-law meaning,'" *Evans*, 504 U.S. at 259 (quoting *Taylor v. United States*, 495 U.S. 575, 592 (1990)), we are confident that Congress, when it enacted 18 U.S.C. § 662, understood the term "feloniously taken" to be a term of

art meaning "taken with the intent to steal" rather than "taken in a manner that is a felony," and we so hold.

Our conclusion that "feloniously taken" is a term of art meaning "taken with intent to steal" addresses Simmons' statutory construction arguments. Because "feloniously taken" is a term of art, the adverb "feloniously" cannot modify the words "stolen" and "embezzled" in the statute. *See State v. Gulizo*, 90 So. 415, 416 (La. 1921) (interpreting the Louisiana code); *Harless v. United States*, 45 S.W. 133, 137 (Ct. App. Ind. Terr. 1898) (interpreting a predecessor statute to § 662). Also, given the common-law heritage of the statute, the adverb "feloniously" cannot modify "stolen" and still make sense — "stolen" would be modified by a word meaning "with intent to steal." Simmons also asserts that the statute's requirement that the defendant know that the items were "*so* taken, stolen, or embezzled" indicates that the adverb "feloniously" modifies all three subsequent terms, 18 U.S.C. § 662 (emphasis added), but it is much more likely that "so" applies only to the term "taken," as "feloniously" does before it. And, finally, the fact that Congress enacted 18 U.S.C. § 2314, another stolen goods statute, on the same day in 1948 as § 662 without using the term "feloniously taken" is simply irrelevant, as § 2314 was the reenactment of a more modern statute that was not derived from the English and common-law antecedents discussed above.

As the government has pointed out, if we were to give 18 U.S.C. § 662 the construction that Simmons urges, enforcement of the statute would be dependent upon divergent state laws and therefore result in uneven application throughout the United States. Under Simmons' interpretation, for example, the knowing receipt of stolen goods worth $300 might violate 18 U.S.C. § 662 if the goods were stolen in Virginia, where the larceny of goods worth more than $200 is a felony, *see* Va. Code §§ 18.2-95, 18.2-96, but not if the goods were stolen in Maryland, where theft is not a felony unless the goods are valued at more than $500, *see* Md. Ann. Code, art. 27, § 342(f). Moreover, because one element of the offense established by 18 U.S.C. § 662 is the defendant's *knowledge* that the goods were "so taken, stolen, or embezzled," Simmons' understanding of § 662 is premised upon the dubious proposition that Congress intended to require that the defendant know both (1) in which state the goods in his possession were stolen and (2) the distinction between misdemeanor and felony thefts

in that state. To avoid such uneven and illogical applications of the federal criminal laws, we generally presume that "in the absence of a plain indication to the contrary, . . . Congress, when it enacts a statute, is not making the application of the federal act dependent on state law." *Jerome v. United States*, 318 U.S. 101, 104 (1943). We see no such plain indication here.

Accordingly, we hold that to prove a violation of 18 U.S.C. § 662, the government need not show that the underlying theft was a felony.

Simmons' argument that we should estop the government from maintaining otherwise in this case, because the government took a contrary position before the grand jury, is without merit. Judicial estoppel is a doctrine "that prevents a party who has successfully taken a position in one proceeding from taking the opposite position in a subsequent proceeding." *King v. Herbert J. Thomas Memorial Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998). The prior position must have been accepted by the court, and the party sought to be estopped must have "intentionally misled the court to gain unfair advantage." *Tenneco Chems. v. William T. Burnett & Co., Inc.*, 691 F.2d 658, 665 (4th Cir. 1982); *see also King*, 159 F.3d at 196. It is not at all clear from the record that the government adopted a contrary position before the grand jury, and therefore the doctrine of judicial estoppel is not even applicable. Even so, an assistant United States Attorney arguing a point before the grand jury cannot, through that argument, alter the meaning of a statute enacted by Congress and bind the court in subsequent applications of it.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.