PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

MOHAMED ADAM ABDELSHAFI,

*Defendant-Appellant.*

No. 08-4884

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Henry E. Hudson, District Judge.
(3:07-cr-00428-HEH-1)

Argued: December 2, 2009

Decided: January 25, 2010

Before NIEMEYER and AGEE, Circuit Judges,
and John Preston BAILEY, Chief United States
District Judge for the Northern District of West Virginia,
sitting by designation.

Affirmed by published opinion. Judge Agee wrote the opinion, in which Judge Niemeyer and Judge Bailey joined.

## COUNSEL

**ARGUED**: John Britton Russell, Jr., DURRETTEBRADSHAW, PLC, Midlothian, Virginia, for Appellant. Joseph

Errington Atkinson, OFFICE OF THE ATTORNEY GEN-
ERAL OF VIRGINIA, Richmond, Virginia, for Appellee. **ON
BRIEF:** Dana J. Boente, Acting United States Attorney,
Alexandria, Virginia, Richard D. Cooke, Assistant United
States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Richmond, Virginia, for Appellee.

---

**OPINION**

AGEE, Circuit Judge:

Mohamed Adam Abdelshafi was convicted in a bench trial
in the Eastern District of Virginia on fifteen counts of health
care fraud, in violation of 18 U.S.C. § 1347, and two counts
of aggravated identity theft, in violation of 18 U.S.C.
§ 1028A, and sentenced to sixty-two months' imprisonment.[1]
On appeal, Abdelshafi does not challenge his convictions for
health care fraud, but contends the district court erred on two
grounds. First, Abdelshafi contends the Government's evi-
dence was insufficient to establish his guilt of aggravated
identity theft, as a matter of law, because the Government
failed to prove that he used Medicaid patients' identifying
information "without lawful authority." 18 U.S.C.
§ 1028A(a)(1). Second, Abdelshafi argues that his sentence
on the health-care-fraud counts should be vacated because he
should not have received a two-level, offense-level enhance-
ment for abuse of trust. *See* U.S.S.G. § 3B1.3. For the reasons
that follow, we affirm the judgment of the district court.

---

[1]The district court imposed concurrent, thirty-eight-month sentences on
the fifteen health-care-fraud counts. Separately, the court imposed twenty-
four month sentences on the two aggravated-identity-theft counts, to run
concurrently with each other and consecutive to Abdelshafi's sentence on
the health-care-fraud counts. *See* 18 U.S.C. §§ 1028A(b)(2) & (4).

## I. Background

Although the parties vigorously contest how the law applies to the essential facts of this case, those facts are not in dispute. Virginia Premier Health Plan ("Virginia Premier"), a health maintenance organization, contracts with the Virginia Department of Medical Assistance Services to provide medical services — including medical transportation services — to Medicaid patients in Virginia.[2] Some medical transportation services are provided directly by Virginia Premier, while others are contracted to third-party vendors. Abdelshafi owned and operated one such third-party vendor, Shafi Medical Transportation ("SMT").

Virginia Premier contracted with SMT to provide medical transportation to some of its members. Typically, Virginia Premier would send SMT a daily trip log, which included patients' identifying information, contact information, and trip details. Importantly, the patient's identifying information included that person's Medicaid identification number. The data in these trip logs served as SMT's direction to transport patients and to bill Virginia Premier. For example, each handwritten claim form Abdelshafi submitted on behalf of SMT included the patient's name, date of birth, Medicaid identification number, date of service, pick-up and drop-off locations, and number of miles traveled. Virginia Premier would then pay SMT based on such factors as the mileage traveled, driver's wait time, whether wheelchair transportation was provided, and whether transportation was provided outside of normal business hours, all as submitted by Abdelshafi.

SMT's billing practices came under suspicion after Virginia Premier discovered that several claim forms Abdelshafi submitted contained substantially inflated mileage amounts.

---

[2]The Virginia Department of Medical Assistance Services administers Virginia's Medicaid program. *See HCMF Corp. v. Allen*, 238 F.3d 273, 275 (4th Cir. 2001).

The ensuing investigation by state and federal authorities revealed that Abdelshafi not only inflated mileage amounts, but also submitted claim forms for trips that did not, in fact, occur. Investigators concluded these billing practices allowed Abdelshafi to collect at least $308,329.00 in fraudulent payments.

At trial, Abdelshafi argued in a motion for acquittal that he could not be guilty of aggravated identity theft because he did not use Medicaid patients' identifying information "without lawful authority." 18 U.S.C. § 1028A(a)(1). Abdelshafi contended that since Virginia Premier specifically furnished him with patients' identifying information for use in SMT's billing, he was in lawful possession of the Medicaid identification numbers and other identifying information. In Abdelshafi's view, "excessive use" of that legitimately obtained identifying information "over and above" what was authorized by Virginia Premier did not constitute a use "without lawful authority." Joint Appendix ("J.A.") at 384. Abdelshafi argued that to be a use "without lawful authority" an individual must "try[ ] to take someone else's identity and pretend to be that person or . . . pretend that they have been providing services for that person." *Id.*

The district court considered the matter and ruled that the aggravated-identity-theft statute "does not require that" another's identifying information "be stolen" or misappropriated. *Id.* at 394. Further, the court read 18 U.S.C. § 1028A(a)(1) to proscribe the use of another "person's identity for any unlawful purpose[ ]." *Id.* at 395.

> The Court is of the opinion that reading the statute over, it indicates that it is unlawful to use a person's identity for any unlawful purposes, and that it's the use of it that is important. They may have the authority to have the identification for one purpose but yet may not use it for another unlawful purpose.

> This situation is the latter. There was no authority
> to use the identity of either of these two individuals
> for the purpose of filing a false medical claim.

*Id.* at 394-95.

At sentencing, Abdelshafi also objected to a proposed two-level enhancement of his Guidelines offense level on the health-care-fraud counts for abusing a position of trust. *See* U.S.S.G. § 3B1.3. First, Abdelshafi maintained that his relationship with Virginia Premier consisted of a mere "ordinary commercial contract" and thus did not involve a position of trust. J.A. at 418. Second, focusing on the limited services SMT provided, Abdelshafi argued that he did not possess the "significant amount of discretion" necessary to support such an enhancement. *Id.*

The district court determined that the appropriate inquiry turned on "the total discretion" Abdelshafi possessed "with respect to the victim." *Id.* at 424. Abdelshafi, in the district court's view, "exercise[d] discretion" in recording "how many miles that he drove, the time of day, [and] the type of transportation" in what was "somewhat of a self-policing relationship" in regard to billing Virginia Premier. *Id.* at 427. In addition, Abdelshafi's discretion in this regard occurred in the context "of providing Medicaid services" and clearly involved "compensat[ion] from Medicaid funds." *Id.* at 426. The district court consequently overruled Abdelshafi's objection and increased his offense level by two levels for abusing a position of trust.

## II.  Analysis

On appeal, Abdelshafi reasserts these arguments in contending that the district court erred in denying his motion for acquittal on the aggravated identity theft counts and in imposing a Guidelines enhancement for abuse of trust. "We review de novo a district court's denial of a motion, made pursuant

to Rule 29 of the Federal Rules of Criminal Procedure, for judgment of acquittal." *United States v. Perkins*, 470 F.3d 150, 160 (4th Cir. 2006). Similarly, we "review de novo the district court's legal interpretation of what constitutes 'a position of trust' under [U.S.S.G.] § 3B.3," but our review of the district court's "factual findings" is only "for clear error." *United States v. Ebersole*, 411 F.3d 517, 535-36 (4th Cir. 2005). We have jurisdiction over this appeal under 28 U.S.C. § 1291.

## A.   Aggravated Identity Theft

The aggravated-identity-theft statute, 18 U.S.C. § 1028A, in pertinent part reads as follows: "Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." 18 U.S.C. § 1028A(a)(1). This mandatory two-year sentence must run consecutive to "any other term of imprisonment imposed on the person under any other provision of law." *Id.* § 1028A(b)(2).

To establish a violation of § 1028A(a)(1), the Government must prove the defendant (1) knowingly transferred, possessed, or used, (2) without lawful authority, (3) a means of identification of another person, (4) during and in relation to a predicate felony offense.[3] *See* 18 U.S.C. § 1028A(a)(1); *see also United States v. Stephens*, 571 F.3d 401, 404-405 (5th Cir. 2009); *United States v. Hurtado*, 508 F.3d 603, 606-07 (11th Cir. 2007), *abrogated in part on other grounds by*

---

[3]For purposes of § 1028A(a)(1), a "means of identification" is defined as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual." 18 U.S.C. § 1028(d)(7); *see also United States v. Mitchell*, 518 F.3d 230, 234-35 (4th Cir. 2008).

*Flores-Figueroa v. United States*, 129 S. Ct. 1886 (2009). Abdelshafi's convictions for health care fraud qualified as predicate felony offenses under 18 U.S.C. § 1028A(c)(1).

The argument on appeal relates only to the second element of a § 1028A(a)(1) offense, as Abdelshafi maintains that his use of Medicaid patients' identifying information was not "without lawful authority." In order to use the identification of another without lawful authority, Abdelshafi contends that a defendant must "misappropriat[e] or "misrepresent[ ] . . . someone's identity or identifying information." Opening Brief at 16. Because he "did not steal or otherwise unlawfully obtain," *id.* at 20, Medicaid patients' identifying information or "misrepresent[ ] . . . his own or some other person's identity," *id.* at 22, Abdelshafi argues he did not commit aggravated identity theft.

When engaging in statutory interpretation, we "first and foremost strive to implement congressional intent by examining the plain language of the statute." *United States v. Passaro*, 577 F.3d 207, 213 (4th Cir. 2009). "[A]bsent ambiguity or a clearly expressed legislative intent to the contrary," we thus give a statute its "plain meaning." *United States v. Bell*, 5 F.3d 64, 68 (4th Cir. 1993). A statute's plain meaning is determined by reference to its words' "ordinary meaning at the time of the statute's enactment." *United States v. Simmons*, 247 F.3d 118, 122 (4th Cir. 2001). We remain mindful that in "interpreting the plain language of a statute, we give the terms their ordinary, contemporary, common meaning, absent an indication Congress intended" the statute's language "to bear some different import." *Stephens ex rel. R.E. v. Astrue*, 565 F.3d 131 (4th Cir. 2009) (quotations omitted).

As the Supreme Court noted in its discussion of § 1028A(a)(1) in *Flores-Figueroa v. United States*, 129 S. Ct. 1886 (2009), "[n]o special context is present here." 129 S. Ct. at 1891. Our analysis accordingly focuses on the statute's plain text. We agree with the Eleventh Circuit that "[n]othing

in the plain language of the statute requires that the means of identification" at issue "must have been stolen" — or as Abdelshafi characterizes the point "misappropriated" — "for a § 1028A(a)(1) violation to occur." *Hurtado*, 508 F.3d at 607. Consequently, "strong textual reasons" support our rejection of Abdelshafi's version of the statute's meaning. *Flores-Figueroa*, 129 S. Ct. at 1890.

The Eleventh Circuit in *Hurtado* aptly stated the pertinent point: "For sure, stealing and then using another person's identification would fall within the meaning of 'without lawful authority.' However, there are other ways someone could possess or use another person's identification, yet not have 'lawful authority' to do so." 508 F.3d at 607. For example, in this case, Abdelshafi came into lawful possession, initially, of Medicaid patients' identifying information and had "lawful authority" to use that information for proper billing purposes. He did not have "lawful authority," however, to use Medicaid patients' identifying information to submit fraudulent billing claims. We thus find no textual basis in the statute for Abdelshafi's assertion that identifying information must be stolen or "misappropriated" to be used "without lawful authority."[4]

Section § 1028A(a)(1)'s "broader context" further supports our conclusion that a person need not "misappropriate" another's identity to use it "without lawful authority." *Passaro*, 577 F.3d at 213. As noted in *Hurtado*, 18 U.S.C. § 1028 — the

---

[4]The only language in § 1028A that could support Abdelshafi's argument is the statute's title of "Aggravated identity *theft*." 18 U.S.C. § 1028A (emphasis added). Abdelshafi wisely does not press this point to support his argument, as it is well established that "'the title of a statute cannot limit the plain meaning of [its] text.'" *United States v. Buculei*, 262 F.3d 322, 331 (4th Cir. 2001) (quoting *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998)). Neither does Abdelshafi argue that the plain language of § 1028(a)(1) is ambiguous. We therefore agree with the *Hurtado* Court that "we need not consider the title of § 1028(A) ('Aggravated Identity Theft') because the phrase 'without lawful authority' in § 1028A(a)(1) is plain and unambiguous." 508 F.3d at 608 n.6.

section preceding § 1028A — "enumerates eight identity-fraud violations." 508 F.3d at 607-08. Two of these violations specifically require that an identification document be "*stolen or produced without lawful authority.*" 18 U.S.C. §§ 1028(a)(2) & (6) (emphasis added); *see also Hurtado*, 508 F.3d at 607.

If Congress had wished to include a misappropriation element in the aggravated-identity-theft statute it stands to reason that it would have included language in § 1028A(a)(1) similar to that used in the immediately preceding section. As the *Hurtado* Court explained:

> If Congress intended to provide for an enhanced penalty only when an identification was stolen by a defendant and then used in the commission of another crime (such as passport fraud), it easily could have used the words "stolen" or "theft" in § 1028A(a)(1). The fact that Congress used the word "stolen" in § 1028, but chose the broader phrase "without lawful authority" in § 1028A(a)(1) plainly indicates that Congress intended to prohibit a wider range of activities in § 1028A(a)(1) than just theft.

508 F.3d at 608. The fact that Congress did not include such language in § 1028A(a)(1) supports our conclusion that the aggravated-identity-theft statute does not contain a misappropriation element: "'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Dean v. United States*, 129 S. Ct. 1849, 1854 (2009) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)) (alteration in original); *see also Hurtado*, 508 F.3d at 608.

Contrary to Abdelshafi's assertions, the aggravated-identity-theft statute's use of the phrase "without lawful

authority" is "broad and unambiguous." *United States v. Monsanto*, 491 U.S. 600, 609 (1989); *see also Hurtado*, 508 F.3d at 608 n.6. The statute prohibits an individual's knowing use of another person's identifying information without a form of authorization recognized by law. *See United States v. Hines*, 472 F.3d 1038, 1039-40 (8th Cir. 2007). While Abdelshafi had authority to possess the Medicaid identification numbers, he had *no* authority to use them unlawfully so as to perpetuate a fraud. We, therefore, decline to narrow the application of § 1028A(a)(1) to cases in which an individual's identity has been misrepresented, as it would clearly be inappropriate for us "to adopt an interpretation[ ] not supported by the plain text of the statute." *United States v. Pressley*, 359 F.3d 347, 351 (4th Cir. 2004).[5]

Our conclusion in this regard is not altered by Abdelshafi's representation that "every single incident of health care fraud by a provider would also constitute aggravated identity theft" if his conduct is deemed to violate the statute.[6] Opening Brief

---

[5]We similarly reject Abdelshafi's contention that to use another person's identifying information "'without lawful authority' there must be no authority for the basic, underlying use to which it is put," *i.e.*, the statute "is not meant to apply to instances where the basic use is clearly authorized but the authorization is then abused or used excessively." Opening Brief at 22. Section § 1028A(a)(1) does not distinguish between "basic uses" and "excessive uses" of another person's identifying information. Rather, the statute applies to any knowing use of another's identifying information performed without a form of authorization recognized by law.

[6]During oral argument in this case, Abdelshafi's counsel argued that § 1028A(a)(1)'s separate use and predicate felony elements necessitate that the use without lawful authority for which a defendant is charged under § 1028A(a)(1) be "different than the predicate act use." Counsel contended that otherwise the statute's use language would be "superfluous." Because this argument was not presented in Abdelshafi's opening brief, it has been waived. *See United States v. Jones*, 308 F.3d 425, 427 n.1 (4th Cir. 2002). Even if we were to consider this argument, we would conclude that it lacked merit. Section § 1028A(a)(1) establishes an enhanced penalty for those who knowingly transfer, possess, or use another person's identifying information "*during and in relation to*" a

at 21. Section 1028A(a)(1) provides an enhanced penalty for those who unlawfully use another's identifying information during and in relation to a broad array of predicate offenses, including crimes related to the "theft of government property" and "fraud," as well as offenses involving "unlawful activities related to passports, visas, and immigration." *Flores-Figueroa*, 129 S. Ct. at 1888-89. That a single type of health care fraud related to provider payments — a subset of crimes involving fraud and theft — may fall within the statutory ambit is not particularly noteworthy.

"Even if we were more persuaded than we are by [this] policy argument[ ], the result in this case would be unchanged. Resolution of the pros and cons of whether a statute should sweep broadly or narrowly is for Congress." *United States v. Rodgers*, 466 U.S. 475, 484 (1984). We adhere to the principle that "[f]ederal crimes are defined by Congress, and so long as Congress acts within its constitutional power in enacting a criminal statute, this Court must give effect to Congress' expressed intention concerning the scope of conduct prohibited." *United States v. Kozminski*, 487 U.S. 931, 939 (1988). Congress' decision to impose additional punishment on those who use another's identifying information to submit fraudulent claims for payment for health-care related services "is not so 'absurd or glaringly unjust' as to lead us to question whether Congress actually intended what the plain language of [§ 1028A(a)(1)] so clearly imports." *Rodgers*, 466 U.S. at 484 (quoting *Sorrells v. United States*, 287 U.S. 435, 450 (1932)) (internal citation omitted).

---

wide array of predicate offenses. 18 U.S.C. § 1028A(a)(1) (emphasis added); *see also id.* § 1028A(c). Although the same underlying transfer, possession, or use may occasionally support both a defendant's predicate felony and a § 1028A(a)(1) enhancement, on other occasions a different predicate act will serve as the basis for the enhancement. No more need be said to show that our interpretation does not render the statute's "use" language superfluous. *See Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) (recognizing that "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme").

After all, the use of another person's means of identification makes a fraudulent claim for payment much harder to detect and, therefore, more likely to succeed. It also often casts undue suspicion on the individuals whose identifying information is misused and infringes their interest in keeping personal information private and secure. These factors provide ample justification for the increased punishment of those who use another's identifying information in fraudulently billing for medical services. A literal reading of the unambiguous terms of the statute, "in light of ordinary principles of statutory interpretation," therefore, will not produce "absurd results" or "thwart the obvious purpose of the statute."[7] *United States v. Morison*, 844 F.2d 1057, 1064 (4th Cir. 1988) (quotations omitted). Consequently, our "inquiry is complete" and "there is no need to consult legislative history nor to look to the 'rule of lenity.'"[8] *Id.* (quotations omitted). We thus conclude that the district court did not err in ruling that Abdelshafi's conduct was "without lawful authority" and violated § 1028A(a)(1).

## B.   Abuse of Trust Enhancement

We now turn to Abdelshafi's claim that the district court erred in imposing a two-level enhancement to his Guidelines'

---

[7]We note that Abdelshafi has failed to refer us to any portion of § 1028A(a)(1)'s legislative history that suggests our interpretation of the statute is "'demonstrably at odds with the intentions of its drafters.'" *Morison*, 844 F.2d at 1064 (quoting *United States v. Locke*, 471 U.S. 83, 93 (1985)).

[8]At oral argument, Abdelshafi's counsel pointed us to the rule of lenity and the interpretative canon that criminal statutes must be strictly construed. We note that the rule of lenity does not apply in this case because § 1028A(a)(1)'s text is unambiguous. *See United States v. Helem*, 186 F.3d 449, 455 (4th Cir. 1999). Furthermore, "[t]he canon in favor of strict construction [of criminal statutes] is not an inexorable command to override common sense and evident statutory purpose. . . . [I]t is satisfied if the [statute's] words are given their fair meaning in accord with the manifest intent of the lawmakers." *United States v. Moore*, 423 U.S. 122, 145 (1975) (quoting *United States v. Brown*, 333 U.S. 18, 25-26 (1948)).

offense level for abuse of trust. *See* U.S.S.G. § 3B1.3. On appeal, Abdelshafi argues that he "had no relationship with Medicaid and was given no discretion by Virginia Premier. Therefore the position of trust enhancement is inapplicable." Opening Brief at 26. For the following reasons, we disagree.

Section 3B1.3 of the United States Sentencing Guidelines provides that a defendant's offense level should be increased by two levels "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." Accordingly, the enhancement applies if "the defendant abused a position of trust and that abuse significantly contributed to the commission or concealment" of the underlying offense. *United States v. Akinkoye*, 185 F.3d 192, 203 (4th Cir. 1999). Whether a defendant held a position of trust must be assessed from the perspective of the victim. *See United States v. Bollin*, 264 F.3d 391, 415 (4th Cir. 2001).

In evaluating application of the enhancement, we generally weigh three factors to determine whether a particular defendant abused a position of trust, including (1) whether the defendant had special duties or special access to information not available to other employees, (2) the extent of the discretion the defendant possessed, and (3) whether the defendant's actions indicate that he is more culpable than others in similar positions who engage in criminal acts. *See Akinkoye*, 185 F.3d at 203. In this case, however, resort to the traditional balancing test proves unnecessary. Application note 2(B) to § 3B1.3 specifies that an abuse-of-trust enhancement applies, "[n]otwithstanding Application Note 1, or any other provision of this guideline," when the defendant "exceeds or abuses the authority of his or her position in order to obtain, transfer, or issue unlawfully, or use without authority, any means of identification."

The facts of this case fall plainly within the scope of application note 2(B). Abdelshafi abused the authority of his posi-

tion in using Medicaid patients' identifying information, without authority, to file fraudulent claims for payment. Application note 2(B) cites as an example of an abuse of trust under the guideline "a hospital orderly who exceeds or abuses the authority of his or her position by obtaining or misusing patient identification information from a patient chart." U.S.S.G. § 3B1.3 application note 2(B)(ii). Abdelshafi, quite similarly, abused the authority of his position in misusing the patient identification information listed on trip logs he received from Virginia Premier.

Abdelshafi's arguments in regard to his lack of discretion and fiduciary relationship with Medicaid are beside the point in the face of the plain reading of application note 2.[9] We, therefore, do not address Abdelshafi's arguments in regard to either application note 1 or our precedents regarding its scope.[10]

For present purposes, it is sufficient to say that Abdelshafi enjoyed a position of trust in regard to patients' identifying information comparable to that of a hospital orderly in the application note (2)(B) example. This conclusion remains valid regardless of whether we consider the victim in this case to be Medicaid, Virginia Premier, the patients whose identifying information Abdelshafi misused, or all of them. Furthermore, Abdelshafi's abuse of trust significantly facilitated his

[9]The Guidelines' "policy statements and commentary are generally entitled to treatment as authoritative guides with controlling weight, unless [they are] inconsistent with a statute or the Sentencing Guidelines themselves." *United States v. Wiley-Dunaway*, 40 F.3d 67, 71 (4th Cir. 1994), *superseded on other grounds as recognized by United States v. Mosley*, 200 F.3d 218, 223-24 (4th Cir. 1999). Accordingly, we give controlling weight to § 3B1.3's application note 2.

[10]We recognize that the parties have not approached the abuse-of-trust enhancement from the perspective of application note 2(B), but "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991).

commission of aggravated identity theft, as it granted him access to the patient identifying information necessary to file fraudulent billing claims. We accordingly uphold the district court's decision to impose an abuse-of-trust enhancement. *See United States v. McHan*, 386 F.3d 620, 623 (4th Cir. 2004) (recognizing we are entitled to affirm on any ground supported by the record, including theories not relied upon by the district court).

### III.   Conclusion

For the above-stated reasons, we affirm the judgment of the district court.

*AFFIRMED*