**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-4546**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KATHLEEN CULBRETH,

Defendant – Appellant.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.   Peter  J.  Messitte,  Senior  District
Judge.  (8:09-cr-00645-PJM-1)

Submitted: May 31, 2011                 Decided:   June 14, 2011

Before NIEMEYER, KEENAN, and WYNN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

James  Wyda,  Federal  Public  Defender,  Ebise  Bayisa,  Staff
Attorney,  Greenbelt,  Maryland,  for  Appellant.    Rod  J.
Rosenstein,  United  States  Attorney,  Jonathan  Biran,  Assistant
United  States  Attorney,  Kiran  Patel,  Special  Assistant  United
States Attorney, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Kathleen Culbreth pled guilty to bank fraud, 18 U.S.C. § 1344 (2006) (Count One), and credit card fraud, 18 U.S.C. § 1029(a)(2) (2006) (Count Two), and received a sentence of forty-one months' imprisonment. Culbreth appeals her sentence, arguing that the district court erred in finding that she abused a position of trust, U.S. Sentencing Guidelines Manual § 3B1.3 (2009). We affirm.

Culbreth was hired as office manager for Cardinal Scientific, Incorporated, by Andrew Brosky, who had started the company. She worked there for three years. Her duties included bookkeeping, preparing bills and invoices, answering the telephone, and getting the mail. Only Brosky had the authority to sign checks; however, Culbreth opened invoices from suppliers as they arrived, logged them into Cardinal's electronic accounting system, and printed checks. The checks were kept in a file cabinet in Brosky's office, but Culbreth had authority to go into his office and take checks from the file cabinet as needed. She was the only employee so authorized, apart from Brosky. Culbreth was also the only employee besides Brosky who could access the company's bank accounts and lines of credit electronically with its user name and password.

Once or twice a month, Culbreth gave Brosky a folder of invoices and checks; he reviewed them and signed the checks

2

if they appeared to be in order. Culbreth was also responsible for following up with customers who had not paid Cardinal on time, and making arrangements for them to pay in installments, if necessary.

Within a month of being hired, Culbreth began printing checks made payable to herself and forging Brosky's signature. Thereafter, until her fraud was discovered, Culbreth created at least one check made payable to herself every month but one. Culbreth covered up her activity by using her access to Cardinal's electronic banking system to move money among Cardinal's three lines of credit and its business checking account. She changed the entries in Cardinal's general ledger so that, for amounts actually paid to her, the payee listed in the general ledger was one of Cardinal's creditors. Culbreth also committed credit card fraud against Cardinal by contacting the issuers of Cardinal's Bank of America and BJ's credit cards, without authorization, and requesting that she be added as an authorized user on each card.

Culbreth's criminal activity went undiscovered for three years. Brosky eventually suspected a problem with Culbreth's bookkeeping. However, he did not suspect that she was stealing, and when he asked his accountants to investigate in August 2006, they did not discover the fraud for several months. Only when Brosky noticed a July payment to a vendor who

3

he remembered had been paid in full in March did Culbreth admit that she had done more than make mistakes. Thereafter, Brosky learned that Cardinal's two $100,000 lines of credit, one of which had been opened in anticipation of the company's move to a new building, were both exhausted. The money had been moved into Cardinal's checking account, and Culbreth had used it to gamble.

At sentencing, the district court observed that the adjustment applied if Culbreth occupied a position of private trust, i.e., "one characterized by managerial discretion, substantial discretionary judgment, which is ordinarily given deference because persons holding those positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." See USSG § 3B1.3 & cmt. n.1. The court found that Culbreth had the responsibility for receiving bills and preparing checks for her boss's signature and that her duties enabled her to make payments to herself. The court found that Culbreth had access to the lines of credit, which allowed her to make it appear that revenues were "flowing in the ordinary course[,]" and that she was the only employee besides Brosky who had the user name and password and could make transfers, which allowed her to "make the operating account look bulkier than in fact it was." The court found that Culbreth was able to transfer funds to the

4

operating account and siphon money out for her own use, undetected, for three-and-a-half years. The court found that the abuse of a position of trust adjustment was appropriate.

The district court's decision that a defendant had a position of trust is a factual determination reviewed for clear error. United States v. Bollin, 264 F.3d 391, 415 (4th Cir. 2001). The question must be examined from the perspective of the victim. United States v. Abdelshafi, 592 F.3d 602, 611 (4th Cir.), cert. denied, 131 S. Ct. 182 (2010). The three factors this court weighs to determine whether the adjustment applies are: "(1) whether the defendant had special duties or special access to information not available to other employees, (2) the extent of the discretion the defendant possessed, and (3) whether the defendant's actions indicate that he is more culpable than others in similar positions who engage in criminal acts." Id. at 611 (citing United States v. Akinkoye, 185 F.3d 192, 203 (4th Cir. 1999)).

Culbreth asserts that she had a low-level, clerical position, lacked check-writing authority, did not supervise other employees, and had little discretion in her duties. She notes that the mere fact that Brosky trusted her is not sufficient because trust on the part of the victim is always present in a fraud case, United States v. Ebersole, 411 F.3d 517, 536 (4th Cir. 2005), whereas the term "position of public

5

or private trust" in § 3B1.3 "is a term of art, appropriating some of the aspects of the legal concept of a trustee or fiduciary." Id. (internal quotation marks and citation omitted). Culbreth asserts that her job involved no more than paying the bills as they arrived and that her fraudulent conduct could have been discovered easily by Brosky through a review of the company's bank statements.

We note first that Culbreth had access to information that no other regular employee had, i.e., the user name and password which allowed her to access Cardinal's electronic banking and to make transfers among the company's checking account and lines of credit without supervision, as well as unquestioned access to the company's checkbook which Brosky kept in his office. Culbreth correctly argues that "lax supervision alone does not convert one's job into a 'position of trust' under § 3B1.3." United States v. Helton, 953 F.3d 867, 870 (4th Cir. 1992). However, Culbreth's claim that Brosky could have easily discovered her thefts through a quick review of the bank statements is not supported by the record. In fact, his accountants could not discover the fraud for months. Thus, the first factor weighs in favor of Culbreth having occupied and abused a position of trust.

It is true that Culbreth did not have much discretion in her normal duties, and the discretion she did have — to

6

negotiate a structured payment for a customer who could not pay his bill in full — does not seem to have helped her commit or conceal her theft.

The last factor, Culbreth's culpability relative to others in a similar position who commit crimes, focuses on the nature and extent of her crime. Akinkoye, 185 F.3d at 204. Culbreth stole from Cardinal on a regular basis over a period of three years and the loss to the company totaled over $200,000. This factor weighs in favor of the district court's finding that Culbreth abused a position of trust. On balance, we conclude that the district court did not clearly err in so finding and in making the adjustment under § 3B1.3.

We therefore affirm the sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED