UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-4674

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TERRY MICHAEL BOWMAN,

Defendant - Appellant.

Appeal from the United States District Court for —the District of Maryland, at Baltimore. Catherine C. Blake, District Judge.  (1:14-cr-00302-CCB-2)

Argued:  October 25, 2017                    Decided:  December 29, 2017

Before DIAZ, THACKER, and HARRIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Gary E. Proctor, LAW OFFICES OF GARY E. PROCTOR, LLC, Baltimore, Maryland, for Appellant.  Tamera Lynn Fine, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.  **ON BRIEF:** Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Terry Michael Bowman ("Appellant") appeals his conviction and sentence for aggravated identity theft arising from his involvement in an elaborate fraudulent scheme. He argues that the Government produced insufficient evidence to support his conviction. To the contrary, we hold that the evidence supports the jury's verdict. Further, Appellant argues that the district court abused its discretion by denying his motion for a new trial, but we agree with the district court's reasoning that the verdict was not against the weight of the evidence.

Finally, Appellant contends that at sentencing, the district court committed procedural error by assuming without deciding that a two level decrease for acceptance of responsibility applied to his United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") calculation. We hold that any error committed was harmless. Therefore, we affirm Appellant's conviction and sentence.

I.

On June 19, 2014, a federal grand jury in Maryland returned a 23 count indictment against Appellant and nine co-defendants. Appellant was charged in four counts: conspiracy to commit bank fraud (Count 1), bank fraud (Count 14), aggravated identity theft (Count 15), and conspiracy to defraud the government (Count 23). The Government subsequently dismissed Count 23.

At trial, which commenced June 6, 2016, the evidence established that prior to 2012, two individuals, Akintunde Akinlosotu and Friday James, began a sophisticated check kiting scheme. As part of the scheme, Akinlosotu and James, using real identities,

3

established fake businesses and fake business bank accounts on which to draw fraudulent checks. Although the exact date is unknown, on or before October 20, 2012, Appellant was introduced to Akinlosotu by a mutual friend so that Appellant could cash checks as part of the scheme. Three or four days after Appellant and Akinlosotu initially met, they coincidentally met again at a gas station. Akinlosotu first testified that he "told [Appellant] everything" at the gas station. J.A. 144.[1] Later, however, he stated that the two only exchanged phone numbers and did not discuss the scheme. Another three or four days after the gas station meeting (six or eight days after the initial meeting), Appellant provided his social security number and copies of photo identification to Akinlosotu. After Appellant had established a working relationship with Akinlosotu, he met James.

The evidence at trial also revealed that Appellant cashed checks on the account of a fraudulent business, Douglas Konn Investment Company, LLC ("DK"), which was created with the stolen identity of an individual, Douglas Konn. Appellant cashed a check on the DK account on three occasions: October 20, 2012, October 22, 2012, and November 2, 2012. Either James or Akinlosotu forged each of the checks.[2]

After November 2, 2012, Appellant's involvement in the scheme deepened. Appellant's identity was used to incorporate at least one fraudulent business, "Teebee Ventures," on June 28, 2013. He also opened fraudulent bank accounts associated with

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

[2] James and Akinlosotu both testified that the handwriting on check #1036 was his own. James and Akinlosotu both testified that the handwriting on checks #1038 and #1041 belonged to Akinlosotu.

4

Teebee Ventures, endorsed checks for those bank accounts, and secured a commercial mailbox for the fake business. Further, Appellant grew the check kiting scheme by recruiting and involving others -- including his own brother.

At the close of the Government's case, Appellant moved for a judgment of acquittal on the aggravated identity theft charge, arguing that the Government had not produced sufficient evidence for conviction. The district court denied the motion. On June 9, 2016, the jury convicted Appellant on all three of the remaining counts against him, that is, conspiracy to commit bank fraud, bank fraud, and aggravated identity theft. Appellant renewed his motion for a judgment of acquittal notwithstanding the verdict as to the aggravated identity theft conviction pursuant to Federal Rule of Criminal Procedure 29. In the alternative, Appellant moved for a new trial pursuant to Federal Rule of Criminal Procedure 33. The district court denied the motions. Specifically, the district court found that there was sufficient evidence to prove that Appellant knew he was using a real identity to cash the DK checks.

At sentencing, the parties disputed whether a two level reduction for acceptance of responsibility applied under the Guidelines. The district court assumed without deciding that the two level decrease applied. Accordingly, the district court calculated a Guidelines range of 51 to 63 months for conspiracy to commit bank fraud and bank fraud, with 24 months to run consecutively for aggravated identity theft. The district court ultimately imposed a sentence of 42 months imprisonment for conspiracy to commit bank fraud and bank fraud, with 24 months to run consecutively for aggravated identity theft, for a total of 66 months imprisonment. Appellant timely appealed.

## II.

### A.

Appellant first attacks the sufficiency of the evidence supporting his aggravated identity theft conviction. "We review the sufficiency of the evidence de novo." *United States v. McLean*, 715 F.3d 129, 137 (4th Cir. 2013).

When an Appellant makes a sufficiency challenge, he or she "must overcome a heavy burden, and reversal for insufficiency must be confined to cases where the prosecution's failure is clear." *United States v. Engle*, 676 F.3d 405, 419 (4th Cir. 2012) (internal quotation marks and citations omitted). Viewing the evidence in the light most favorable to the government, we review whether "the jury's verdict is supported by 'substantial evidence,' that is, 'evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" *McLean*, 715 F.3d at 137 (quoting *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)). "[D]eterminations of credibility are within the sole province of the jury and are not susceptible to judicial review." *Burgos*, 94 F.3d at 863 (internal quotation omitted).

### B.

Appellant contests only his conviction on Count 15, which charged him with aggravated identity theft for cashing checks associated with a stolen identity (Douglas Konn) between October 20, 2012, and November 2, 2012. To establish aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), "the Government must prove the defendant (1) knowingly transferred, possessed, or used, (2) without lawful authority, (3) a means of

6

identification of another person, (4) during and in relation to a predicate felony offense." *United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010). Appellant argues that the Government produced insufficient evidence to prove he acted knowingly. We disagree.

To prove knowledge, the Government must demonstrate that the defendant knew the means of identification at issue belonged to another person. *See Flores-Figueroa v. United States*, 556 U.S. 646, 657 (2009). At trial, the Government adduced (1) a timeline suggesting that before November 2, 2012, Appellant was fully apprised of the nature of the scheme and the use of real identities to effectuate it; and (2) evidence that Appellant had opened a personal bank account prior to October 20, 2012, indicating that he knew a real identity was necessary to open a bank account.

The Government used Akinlosotu's testimony to establish its timeline. Although Akinlosotu could not remember when he first met Appellant, he testified that within three or four days of their initial meeting, the pair met by chance at a gas station. Akinlosotu's testimony was inconsistent about what happened at the gas station. First, he testified that he explained the scheme -- including the use of real identities -- to Appellant at the gas station. But, Akinlosotu later retracted that statement and stated that the pair merely exchanged phone numbers at the gas station. Regardless, within three or four days of the gas station encounter, Appellant provided his social security number and copies of his driver's license and work ID in order to facilitate the scheme.

Based on the Government's evidence, a rational trier of fact could conclude that prior to November 2, Appellant was fully apprised of the scheme and knew real identities were used to cash the DK checks. Indeed, a rational trier of fact could credit Akinlosotu's

7

testimony that this explanation occurred at the gas station, an encounter that occurred no later than October 24, 2012. Moreover, Appellant's delivery of his personal identifying documents to Akinlosotu is highly probative that Appellant had the requisite knowledge at that time. Appellant's delivery of his personal identifying documents occurred no later than October 28, 2012.

The transfer of Appellant's personal identifying documents, combined with Appellant's prior experience opening a personal bank account and Akinlosotu's testimony that he informed Appellant of the details of the scheme at the gas station, is sufficient to prove knowledge and thus, support the guilty verdict on Count 15.

III.

Appellant next appeals the district court's denial of his motion for a new trial. We review the district court's denial of a motion for a new trial for abuse of discretion. *See United States v. Arrington*, 757 F.2d 1484, 1486 (4th Cir. 1985). Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, the district court may grant the defendant's motion for new trial if "the interest of justice so requires." Fed. R. Crim. P. 33. In making this determination, the district court "may evaluate the credibility of the witnesses" and "is not constrained by the requirement that it view the evidence in the light most favorable to the government." *Arrington*, 757 F.2d at 1485. "When the evidence weighs so heavily against the verdict that it would be unjust to enter judgment, the court should grant a new trial." *Id.* This court has recognized, "[T]he trial court's discretion should be exercised sparingly, and a new trial should be granted only when the evidence weighs heavily against the verdict." *Id.* at 1486.

8

Here, the district court found that the verdict was not against the weight of the evidence, and its interpretation of the evidence is entirely consistent with the record. Accordingly, the district court did not abuse its discretion in denying Appellant's Rule 33 motion.

IV.

Finally, Appellant argues that the district court committed procedural error at sentencing by not ruling on whether a two level decrease for acceptance of responsibility applied to his Guidelines calculation. We apply a deferential abuse of discretion standard of review and may use an assumed error harmlessness inquiry. *See United States v. Savillon-Matute*, 636 F.3d 119, 122–24 (4th Cir. 2011).

Under the assumed error harmlessness inquiry, "an appellate court may assume that a sentencing error occurred and proceed to examine whether the error affected the sentence imposed." *United States v. McDonald*, 850 F.3d 640, 643 (4th Cir. 2017). In applying this inquiry, we require "(1) knowledge that the district court would have reached the same result even if it had decided the guidelines issue the other way[;] and (2) a determination that the sentence would be reasonable even if the guidelines issue had been decided in the defendant's favor." *Savillon-Matute*, 636 F.3d at 123 (internal quotations omitted).

A.

We begin by assuming that the district court procedurally erred. As to the first prong of the assumed error harmlessness inquiry, it is important to note that Appellant actually received the benefit of the reduction. The district court assumed without deciding that the

9

two level decrease applied and utilized the corresponding Guidelines range to account for the decrease.

Indeed, the two level reduction was of no consequence to Appellant's sentence because the district court varied downward after accounting for the decrease. Specifically, using a 51 to 63 month Guidelines range, the district court imposed a below Guidelines sentence of 42 months imprisonment for Counts 1 and 14. The district court also imposed a mandatory 24 months imprisonment to run consecutively for Count 15.

Furthermore, the district court made clear that the issue of whether the two level decrease applied was irrelevant to the ultimate sentencing decision. In addressing this dispute, the district court first surmised: "[I]t may be that a decision about the precise guideline level becomes irrelevant and therefore not necessary to carry forward as a dispute." J.A. 577–78. And later, during its statement of reasons for the sentence imposed, the court explicitly confirmed its earlier view, noting:

> If it ever becomes relevant as to whether he was truly entitled to those two levels, then I will get back to that, but, given where we are, . . . I think . . . the practical matter for me to consider under § 3553(a) is that, to some extent, certainly [Appellant] did accept responsibility on those two charges.

*Id.* at 586–87.

## B.

Although Appellant has not challenged the substantive reasonableness of his sentence, we perceive no substantive error.

The district court explained the necessity of a 66 month sentence of imprisonment under the framework of 18 U.S.C. § 3553(a). The district court fully considered the

10

"serious and extensive" nature of the offense, Appellant's criminal history, Appellant's personal mitigating factors, and Appellant's relative culpability. J.A. 587.

Given the deference due to the district court, and because the district court adequately explained its sentence as necessary pursuant to 18 U.S.C. § 3553(a), we conclude that the sentence is substantively reasonable. *See McDonald*, 850 F.3d at 645.

V.

For the foregoing reasons, Appellant's conviction and sentence are

*AFFIRMED*.